# CHARLESTON.

UHL v. OHIO RIVER RAILROAD COMPANY.

Submitted June 6, 1901.    Decided March 8, 1902.

1. WRITTEN EVIDENCE—*Oral Declarations not Received.*

If a writing is not ambiguous, it must speak for tself by its words, without aid of any oral evidence; but if it is ambiguous, oral evidence is admissible to show the occasion of the contract, the situation of the parties, the circumstances surrounding them, their subsequent acts in executing the contract, in order to show their intention in making it; but evidence can-

.not be received to show their declarations, conversations or interlocutions before or at the execution of the contract. (pp. 109, 110).

2. RIGHT OF WAY—*Passes Easement Only.*
The words "right of way" in a grant to a railroad company, taken alone, mean an easement only, and do not pass the very land itself. (p. 112).

3. RAILROAD RIGHT OF WAY—*Buildings—Easement.*
An agreement grants to a railroad company "the full and free right of way of the width of 50 feet  * * *  in, upon and through the lands of the said Uhl  * * *  . which right of way is hereby granted and conveyed, for the construction, building and use of the road of said company." It also says, "And the said Uhl also hereby covenants and agrees to execute and acknowledge in due form of law, when required by said company, a deed conveying to said company in fee simple the land hereinbefore described." Such agreement conveys only a right of way, an easement in fee simple, not the land itself and the oil in it. (p. 113).

4. EASEMENT—*Conveyance—Covenant—Estate.*
The covenant in this agreement to execute a deed conveying the land in fee simple is a dependent covenant, and the estate or interest conveyed by the agreement being limited to the right of way, which is an incorporeal hereditament, the operation of said covenant is necessarily restricted and limited by the granting clause, and does not require the conveyance of a greater estate. (p. 114).

5. CONVEYANCE—*Covenant—Deed.*
The covenant in a deed for further assurance means a covenant to execute a deed for further and better assurance of the estate passed in the granting clause, and does not enlarge that estate. (p. 115).

6. DEEDS—*Construction—Intention.*
. In the construction of deeds, as well as wills, the rule nowadays is that the intention of the grantor controls, and technical words of legal import must yield to plain intent, and the whole instrument, not merely and separately disjointed parts, is to be considered. (p. 116).

Appeal from Circuit Court, Wood County.

Action by C. D. Uhl against the Ohio River Railroad Company and others. From an order refusing to dissolve an injunction, defendant company appeals.

*Affirmed.*

H. P. CAMDEN and W. P. HUBBARD, for appellant.

McCLUER & McCLUER and C. D. FORRER, for appellee.

BRANNON, JUDGE:

An agreement was made between Charles D. Uhl and The Wheeling, Parkersburg & Charleston Railroad Company, the name of which was changed to The Ohio River Railroad Company, which agreement reads as follows: "This agreement made this 13th day of April, 1882, between Charles D. Uhl, of the county of Wood, West Virginia, of the first part, and The Wheeling, Parkersburg & Charleston Railway Company, a corporation under the laws of West Virginia, of the second part, Witnesseth: That whereas the said railway company proposes to construct and build its road through the said county of Wood, now in consideration of the advantages which said road will be to the said party of the first part, and to his property, and of the premises, and the further consideration that the said railroad company will make a good roadway or crossing where the private road of said Uhl crosses said railroad, and also put in or build cattle stops wherever said railroad comes from one field to another, the said Charles D. Uhl does hereby grant and convey unto the said Wheeling, Parkersburg and Charleston Railway Company the full and free right of way of the width of fifty feet with necessary grounds for cuts and fills for the road of said company in, upon and through the lands of the said Uhl, upon which he now resides, described substantially as follows, to-wit: Being the line surveyed by engineer Wharton * * * which right of way is hereby granted and conveyed for the construction, building and use of the road of said company. * * * And the said Uhl also hereby covenants and agrees to execute and acknowledge in due form of law when required by said company, a deed conveying to said company in fee simple the land hereinbefore described. It is also agreed that said Charles D. Uhl hereby also grants and conveys to said railroad company the right of way, upon the same conditions and with the same restrictions, through the tract of land containing 28 or 30 acres above the one upon which he resides, and adjoining the lands of John R. Uhl and John F. Orcel, it being understood that the same conditions applies to this right of way as to the one on the land upon which he now resides." Later the Ohio River Railroad Company made to Samuel Logan a lease of the said fifty

foot strip of land for the purpose of boring for oil, and Logan erected a derrick for that purpose, when Uhl obtained an injunction in the circuit court of Wood County against Logan's operations, and the judge of that court, having refused to dissolve the injunction, the railroad company has appealed the case to this Court.

The railroad company contends that the agreement confers upon it a right of absolute fee simple estate in the very *corpus* or body of the soil of the fifty foot strip, the very land itself, carrying with it all minerals, and consequently the right to extract oil from it, just as Uhl may do on his remaining land, and the company demanded of him a conveyance carrying the very land itself.   On the other hand, Uhl contends that he conferred on the company only an easement, a right to construct and operate upon the land a railroad, and he denies the right to the company, or to any one claiming under its right, to carry on upon the land the business of the production of oil, and thereby damage his remaining land irreparably by draining from it the oil in it.   This controversy thus calls for the construction of said agreement.   If a written contract is not ambiguous, it speaks for itself, and courts must carry its written words into effect; but if it is ambiguous, we may consider the circumstances surrounding the parties at the time they executed it, their situation, the nature of the contract which they were making as to its purpose, in order to enable us to say what that situation or occasion called for, what was their intention, so that we may glean the intention of the parties, as that actual intention is the criterion, the key to unlock the meaning of the contract. *Knowlton* v. *Campbell,* 37 S. E. 581, 48 W. Va. 294; 1 Beach, Mod. Law of Contracts, 702; *Nash* v. *Towne,* 5 Wall. 687.   This agreement is not, in a legal point of view, ambiguous.   Its very face says that the motive and purpose inspiring it, the occasion for its execution, was the obtaining by the company of right of passage for a railroad through Uhl's farm, and to accomplish this purpose a "right of way" was granted "in, upon and through lands of said Uhl."   This is the core of the writing, its essence, its grant, and it speaks a purpose to concede simply a right of way, an easement, a passage for the road.   It does not imply a grant of the very land itself, but only a right of way, "in, upon and through the lands" of Uhl.   Those prepositions "in," "upon," "through," speak this intent to concede

mere passage. If the intent were to grant the land to all intents, why did not the paper do so then by the use of the word "land" in connection with the word "grant"? And treating it as an executory agreement, why did it not use the word "land" in its essential part? Why did it use the words "right of way"? Take the words, "right of way," *prima facie* they legally imply only an easement. To give them other meaning, there must be other words so showing. True, when we speak incidentally of "right of way," we may mean the land on which the right of way exists; but in a grant to a railroad it means only the easement. As this is strongly contested by able counsel in the elaborate argument which has taken place in this hotly contested case, I have for the second time examined this question, and I am confirmed in such opinion. "The words 'right of way' in a grant describe the tenure, not the land granted." *Atlantic & Pacific R. Co.* v. *Lesure,* 37 Am. & Eng. Railroad Cas. 368. A deed conveyed to a railroad company a "certain piece of land * * * described as follows, to-wit: The right of way for a railroad running * * * a strip of land forty feet wide and nine hundred and fifty-two feet in length," with full covenant of warranty, and it was held that the deed conveyed an easement, not a fee in the land. *Jones* v. *Van Bochove,* 103 Mich. 98, 1 Am. & Eng. Railroad Cas. Annotated 664. "'A right of way,' in its legaly and generally accepted meaning in reference to a railway, is a mere easement in the land of others obtained by condemnation or purchase." *Williams* v. *W. N. Ry. Co.,* 50 Wis. 71, 5 Am. & Eng. Railroad Cas. 290; *Calcasieu* v. *Harris,* 43 Am. & Eng. Railroad Cas., Annotated, 570. In the first case cited the court said: "It would be using the term in an usual sence by applying it to an absolute purchase of the fee simple of lands to be used for railroad purposes." ˙ A railroad company owning land conveyed it "reserving and excepting a strip of land * * * to be used for a right of way or other railroad purposes." *Held,* that the deed passed the whole fee to the purchaser, and that the company reserved only a right of way. *Biles* v. *Tacoma R. Co.,* 5 Wash. 509. A deed said "do grant and convey to said R. R. Co. the following piece or tract of land * * * for the construction of said road; to have and to hold to said company forever," and it was held to convey "a right of way simply," not a fee. *Barlow* v. *C. R. I. Co.,* 29 Iowa 276. In *Vermilya* v. *C. M. & St. P. R. Co.,* 66 Iowa 606, the court

said that the words "right of way" meant an easement only. In *Ottumwa* v. *McWilliams*, 11 Iowa—, an agreement to convey a strip of land in fee for railroad purposes was held to convey an easement only. A deed granted to a railroad company "the right of way for so much of said railroad, being eighty feet wide, as may pass through the following land," was held to convey merely an easement, an incorporeal hereditament, the fee remaining in the grantor. *Cincinnati, etc. Co.* v. *Geisel,* 119 Ind. 77. "A grant of a 'way' or the privilege of a highway, does not convey the soil or any interest in it." Jones on Easements s. 208. "A grant of right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor." *Idem.* s. 211. "The grant of a right of way does not convey the soil." *Home v. Richards,* 4 Call 441. "If the deed does not in terms convey the land or soil covered by the way, but merely a way in connection with the land conveyed, the grantee takes no interest or estate in the soil of such way." Jones on Easements s. 207. "The conveyance of a right of way conveys an easement only." 2 Lewis, Eminent Dom., s. 291.

As antagonizing this position as to the effect of the words "right of way" we are cited the case of *I. P. C. Ry. Co.* v. *Rayl,* 69 Ind. 429, and *Chicago, T. & M. Ry. Co.* v. *Fitterington,* 31 Am. St. R. 39, and *Keener* v. *U. P. Ry. Co.,* 31 Fed. 126. These cases do not apply. No question arose in them as to the real title conferred, or the right to take minerals. In the first case the question was the width of the right of way; in the second, whether the title passed so as to be beyond defeasance by the condition of the deed; and in the third, as to whether the land or only the track should be taxed to the company. In the second case we do not know the words of grant or the subject granted, and the third was not a grant, but a condemnation. It is said that we announced contrary law in *Watts* v. *Ry. Co.,* 39 W. Va. p. 204, by simply saying, "The grant in this case was of the fee of the land." So it was there, the land itself being granted, but not in this case. This was said in speaking of damages to the owner's private way. It did not involve the right of the railroad company to take oil or other minerals. Whether when a grant is in words a grant of the very land itself for the construction of a railroad, the company can take oil or other minerals not necessary in the operation of the road, is not involved in this case, and we do not decide that point,

though speaking for myself, I think it cannot do so, to the prejudice of the grantor. In this case the question is whether the company can, under a deed granting, not the land, but a right of way, take oil to the harm of the grantor's other land. It will be noted that most of the deeds above referred to contained language of actual grant of actual land, and yet the presence of the words "right of way," or the declaration that the grant was for railroad purposes, induced the courts to hold that they conferred only an easement. The agreement in this case does not grant land in its granting clause, but only right of way.

Another very influential consideration is that the agreement declares that the purpose of the concession is for the construction of a railroad, which shows that merely an easement was intended. Where the granting clause declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement only, though it be in the usual form of warranty deed. Jones on Easement s. 212. Where the deed grants all the grantor's right, title and interest to land, "for use of a plank road," only an easement passes. *Robinson* v. *Missisquoi R. Co.,* 59 Vt. 426, 30 Am. & Eng. Railroad Cas. 299. So where the conveyance was for a park. *Flaten* v. *City,* 51 Minn. 518. A grant of right of way for "all purposes connected with the construction, use and occupation of said railway," was held not to pass a fee or give right to take sand to build a roundhouse. *Vermilya* v. *Railroad,* 55 Am. R. 279, 66 Iowa 606.

Thus, it seems clear that the face of the agreement plainly speaks the grant of a mere easement, without ambiguity. But suppose we could say that the instrument is ambiguous. When we place ourselves in the situation of the parties, and reflect that they met only to contract for a right of way, that such was the sole design of the company, that the paper so declares on its face, that such was the moving purpose, that the company did not dream of acquiring oil, or of using the land in the oil business, we cannot hesitate for a moment to conclude that merely a right of way was in the contemplation of the parties. We need no oral evidence for this; the writing itself so speaks. The law allows, requires us to take into consideration what all these circumstances show must have been the purpose of the parties. *Nash* v. *Towne,* 5 Wall. 689; Jones on Easements s. 289; *Barlow* v. *Chicago, etc. Co.,* 29 Iowa 276; *Robinson* v. *Missisquoi,* 30 Am. & Eng. Railroad Cas. p. 301.

But great and decisive import is given by counsel for the railroad company to the clause whereby Uhl agreed to "execute in due farm of law a deed conveying to said company in fee simple the land hereinbefore described."

Now, this is to be explained on two plausible theories consistent with our holding. One is that the parties regarded the instrument as only a preliminary executory agreement, and contemplated a formal deed to more fully describe the strip of land, or with other consistent provisions. This is shown by the fact that they gave the name of "agreement" to the paper, and also by the words "in due form of law." So viewing it, we would say that this provision looked forward to a deed for just what the agreement had already in its vital clause stipulated for. We would not make this clause enlarge the estate when both clauses can stand together in harmony. If there should be a future deed, it is true it would have to be in fee simple, that is, convey a fee in an easement, a right of way in fee simple, an incorporeal hereditament; for "a fee simple may be had in incorporeal as well as in corporeal hereditaments," by elemantary law. 1 Wash. Real Prop. 82. This document contains the word "grant," and is all sufficient to pass title; but it was thought that a more formal instrument might in time be wanted, and it was for caution put in, that is the clause in question, as is frequently done. In conveyancing it is common, and is called a covenant for further assurance. The second theory is that if this paper were viewed as a conveyance, not simply an executory instrument, then this clause would be regarded as the old common law covenant of further assurance, meaning that if any further deed should be needed to further or better assure what the instrument had already, in its granting clause, conferred, by reason of some informality, it would be executed. Discussing this covenant Rawle on Covenant for Title, 104, says that the purchaser's right under it may depend on the estate conveyed, and that when the estate conveyed is a limited estate, this covenant will not require the conveyance of a greater estate. Thus, as the prior clause, the vital operative one, had only given a right of way, this clause only contemplated a further deed for that. Our Code, chapter 72, section 18, limits such a covenant to the land conveyed in the granting clause. This is consistent with the well known law that a warranty is a dependent covenant, and applies only to the estate granted, and cannot increase it.

*Hull* v. *Hull,* 35 W. Va. 155. We cannot say that one clause
concedes one estate, the other another. If the intention was to
pass the *corpus,* why not make the instrument do it then?
Covenant for further assurance apply only to the estate granted.
We must look at the whole paper to see what it means and can-
not disregard the first clause passing only a right of way, and
make the other clause pass the soil and all minerals in it. In
deeds the first clause prevails generally over the later, and surely,
a later clause of mere further assurance would not emasculate
and predominate over the prior granting clause, but just the
reverse. As to wills the rule has ever been that regardless of
form or orderly parts, we must look at the real intention; but
this has not been the case in the construction of deeds. Deeds
have orderly parts, technical words of precise legal signification,
and in times gone by those parts and words, and the strict rule
of construction of them, have been rigorously observed often
defeating the manifest intention. Modern construction, how-
ever, has leaned towards the intention, overriding mere form
and technical words, and nowadays it may be said that the in-
tention must rule the construction in deeds as well as in wills.
*Humphrey* v. *Foster,* 13 Grat. 633; *Mauzy* v. *Mauzy,* 79 Va.
537; *Lindsey* v. *Eckels,* (Va. 1) 901, show this to be the rule in
Virginia; and *Hurst* v. *Hurst,* 7 W. Va. 289; and *Goldsmith* v.
*Goldsmith,* 46 *Id.* 426; *McDougal* v. *Musgrave,* 46 *Id.* 509; and
*Bank of Berkeley Springs* v. *Green,* 45 *Id.* 171, 174, show this
to be the rule in West Virginia. The Supreme Court of New
Hampshire in *Webster* v. *Atkinson,* 4 N. H. 21, says: "The
construction of a deed must be made upon the entire instru-
ment, and be such that the whole deed and every part of it may
take effect, and one part must be construed by another, so that
all parts may agree." Such is the general law of the country.
1 Devlin, Deeds, s. 836; *Bodine* v. *Arthur,* 91 Ky. 53, 34 Am.
St. R. 162; *Bassett* v. *Budlong,* 77 Mich. 338, 18 Am. St. R.
404. For instance, deeds generally require the word "grant,"
or the words "bargain and sell," or some technical word suitable
to the character of the conveyance; such is formal conveyanc-
ing; but the word "convey" is now held to be equivalent to the
word "grant" even at common law. *Chapman* v. *Charte,* 46 W.
Va. 769; *Lambert* v. *Smith,* 9 Oregon 185; *Patterson* v. *Carn-
eal,* 3 A. K. Marshall 618, 13 Am. Dec. 208; 4 Kent, Com. 491;
2 Lomax Dig. 81; 2 Minor's Inst. 780. Kent there says that

any word to show intention will do. See *Flaten* v. *City*, 51. Minn. 521. As before stated, we must look at the whole paper, and not allow the words "fee simple" to defeat the plain intention spoken by the recital of the deed as to the occasion and aim of the deed, the construction of a railroad, and the language of the clause granting right of way. If there were repugnancy in the parts of the instrument specified above, we would be compelled by law to make "repugnant words yield to the purpose of the grant, where such purpose is clearly ascertained from the premises of the deed." *Goldsmith* v. *Goldsmith*, 46 W. Va. 426. "The effect of language in a deed is to be gathered from the whole of it, not disjointed parts, so as to give effect to the whole. The intention of the grantor, as derived from the deed itself, should be sought after, and if discovered, should be carried into effect, if it can be done consistently with rules of law." *Allemong* v. *Gray*, 92 Va. 216; *Hurst* v. *Hurst*, 7 W. Va. 289; 17 Am. & Eng. Ency. L. (2 Ed.) 7.

But in fact there is not the slightest conflict between the clauses in question, and this for the reason that reading the words "fee simple" with other parts of the paper, they mean a conveyance of a fee simple right, an easement in fee simple, an incorporeal fee.

The authorities above given are ample to sustain this decision; but we could dispense with them, and cite one single case as conclusively and fully supporting us, because it is a decision of our highest court upon an exactly similar deed to the same company. Pugh made a similar deed, or agreement, and the railroad company leased its right of way land to Logan, for the purpose of boring for oil, and he was boring for oil when Lockwood, to whom the Pugh land had been leased for oil purposes, asked an injunction against Logan in the Circuit Court of the United States for the District of West Virginia, to restrain Logan from operating for oil upon the right of way land, and thereby draining the adjoining land. The circuit court denied the injunction, and the case went to the Circuit Court of Appeals for the Fourth Circuit, which reversed the circuit court, and held that the deed intended to pass only a right of way, and that the company took only an easement in the land; that the agreement having been prepared by the railroad company, any doubt as to its true meaning should be solved adversely to the company, and not be construed most favorably to the grantee

under the general rule; and the covenant to execute a deed conveying the land in fee simple, being a dependant covenant, and the estate or interest conveyed by the agreement being limited to an incorporeal hereditament, the operation of said covenant is necessarily restricted by the granting clause, and cannot require the conveyance of a greater estate. *Lockwood* v. *Ohio R. Co.,* 103 Fed. R. 243. Application was made to the United States Supreme Court for a *certiorari,* but it was refused. 180 U. S. 637.

It is hardly worth while to refer to the argument that our statute law governs the case. The form of deed given in section 1, chapter 72, Code, is referred to, together with the provision of section 2, that "every such deed conveying land shall unless an exception be made therein, be construed to include all the estate, right, title and interest whatever, both at law and in equity, of the grantor in or to such land." That is so, provided the deed does convey the land itself; but if it convey only an easement, or other particular, limited or restricted estate, it is not so. The word "grant" in the form referred to must have a thing for it to operate upon, a thing in the objective case, and its operation is limited to the thing specified as granted, the thing shown by the whole deed to have been intended to be granted, and if that is only a right of way, the word "grant" passes that only.

This construction takes from the company nothing that justly belongs to it. Its right of way is full and complete. Practically its fee simple right of way shuts out Uhl, because it has sole and exclusive right to actual, physical possession for all railroad purposes, with which Uhl can in no manner interfere. *Jackson* v. *Rutland, etc.* 60 Am. Dec. 246; *Troy & Boston R. Co.* v. *Potter,* 1 Am. R. 325; Jones on Easements s. 393. But the company and Logan want to divert Uhl's grant to a purpose foreign to its use for railroad purposes. Authority holds that a railroad company cannot use its right of way for purpose foreign to its legitimate corporate business, to carry on other business. Jones on Easements s. 382. I do not intend to discuss or define on this point, and will only say that though strangers could not, but only the State could, object to a misuse of the charter to do business *ultra vires,* it is plain and just that Uhl, the owner of the body of the land covered by the right of way, and the full owner of the adjoining land, can object to a use

of the right of way land for oil purposes, which use will entail irreparable damage upon him by drainage of the oil from his adjoining land. He has such an interest in the proper use of the railroad strip as will enable him to avert such injury. Therefore, we affirm the order overruling the motion to dissolve the injunction, and remand the case for further proper proceedings.

*Affirmed.*

DENT, PRESIDENT, (*dissenting*) :

The statute law of this State from the time of its creation has always authorized railroad companies to acquire land by gift, grant or condemnation in fee simple absolute. Acting under and by virtue of these laws on the 13th day of April, 1882, the plaintiff agreed in writing to convey the defendant (or its predecessor) the right of way through his lands in fee simple. There is no question that it was at that time the full intention of the parties that the grantee should take the right of way in fee simple absolutely. To pretend to the contrary is to do violence to the promptings of conscience. It is beyond the possibility of a doubt that the words "right of way" were intended by both parties to the contract to cover the fee of the land and not a mere easement. To hold otherwise is to revert to a meaning long since antiquated by the statute law of the State, the evolution of time and the common usages of the people as applied to permanent railroads, the highways of travel and commerce. Nor would such claims ever have been advanced had it not been for the discovery of oil and gas in the neighborhood and the defendant's leasing its right of way for oil and gas purposes. And now to prevent the possible drainage of plaintiff's adjacent land the court is asked to construe away the plain original intention of the parties to the contract and engraft on it an intention to suit the changed condition occasioned by the discovery of oil and gas. *Cady* v. *Gale,* 5 W. Va. 547. The authorities are full of examples of the ability of the courts to accomplish this end for the power of construction is only limited by arbitrary will. The words fee simple which in the statutes of the State and the minds of the people have a common ordinary meaning, being that of the whole estate in land, can by judicial manipulation be made to mean absolutely nothing or almost

anything that a judicial conscience may dictate to subserve the alleged ends of justice. In the present case, as in that of *Lockwood* v. *Ohio River R. Co.*, 103 Fed. R. 243, they are made to mean an intangible incorporeal essence, a ghostly and illusive nothingness, in comparison with the solid meaning intended by the statute law and recognized by all the citizens of the State. *Carter* v. *Tyler*, 1 Call 186, 187; *U. S. Pipe Line Co.* v. *D. L. & W. R. Co.*, 42 L. R. A. 578. The construction thus given to the words "fee simple" in the light of the statute law and the decisions of the State is · certainly highly humorous. It is enough to make stern justice smile with inward delight and the plaintiff can rejoice that a court can give meaning to words which never entered his mind, and he does not now understand. Why is this done? It is not for the purpose of securing to the plaintiff the fee simple in the defendant's right of way. For this in any event amounts to absolutely nothing even in those states which railroad companies are not permitted to own title in fee. The reputed owner of the fee cannot have any possession or control of the land either under or above the surface. He cannot sink shafts or bore wells thereon, but the possession is as absolute and adverse in the railroad company as if it owned the land in fee. Am. & En. En. Law, 400, note; *Caldwell* v. *Fulton*, 31 Pa. St. 475; *Troy & R. R. Co.* v. *Potter*, 42 Vt. 266; *Kansas City R. Co.* v. *Allen*, 22 Kan. 235; *Chicago & M. R. Co.* v. *Putchin*, 16 Ill. 188. In short not even the reputed owner of the fee can sink a well on the land and take the oil and gas if found thereunder unless by authority from the company. Hence the plain object of the holding in this case is not to secure the fee nor the oil and gas under the right of way but it is solely to prevent the possible drainage of oil and gas from plaintiff's adjacent lands. The fee is made the mere scapegoat for this purpose and the court is called upon to exercise the flexible ingenuity of construction to effect this end. In doing so the right of way is forever tied up from oil and gas production to satisfy the cupidity of the adjacent land owner after the principle of the miser who permits himself and friends to starve while he hoards imaginary treasures without regard to the good of others. Thus to administer to individual selfishness to the detriment of the common welfare is contrary to a sound public policy—a policy which never permits individual avarice to stand in the way of the lawful development of the sources of

wealth stored in the bowels of the earth by an all wise creator
for the common enjoyment and happiness of humanity. A rail-
road company is the servant of the people primarily engaged in
administering to their universal well-being when properly dis-
charging its public obligations. Whatsoever adds to its facili-
ties, efficiency and prosperity is a gain to the people and when
it is unnecessarily hampered in the full and rightful enjoyment
of its property the people are injured thereby. When a rail-
road company is deprived of property rights for the purpose of
preventing future imaginary and highly speculative damages to
an individual the people must endure the resulting loss. The
people's good is made subservient to private greed. The de-
fendant company has fully complied with the conditions and
considerations which entitled it to a fee in the land, and it
ought to have it without regard to the question of oil or gas.
These can be the absolute property of no one until reduced to
possession. If the defendant did not acquire the fee from the
plaintiff it would still have the right to condemn it. What is
there to condemn. There is really nothing left in the plain-
tiff except the right of reversion which is so remote and im-
probable as to be of no value. The probability of oil and gas
is merely speculative and incapable of estimation. And the
damage that might result to the adjacent lands by reason of
possible drainage of oil, water or gas could not be considered, as
there exists no basis for computation or legal liability. In the
case of *Johnson* v. *Ohio R. R. Co.*, 40 S. E. 407, this Court held
a railroad company could acquire land by adverse possession
for more than ten years. In the case of *Adkins* v. *Spurlock*, 46
W. Va., 139, the Court held that adverse possession for ten years
divests the title and confers it on the adverse holder. The de-
fendant has for over ten years been in the open, notorious, exclu-
sive and adverse possession of the land claiming fee simple title
therein, and if it is possible for a railroad company to acquire
land by adverse title defendant certainly has done so in this
case and the plaintiff having slept on his rights and being out of
possession for more than ten years has no right to maintain this
suit for a reformation of his deed, duly received and recorded by
the defendant. It being such a paper as would have protected
defendant's possession in a suit of ejectment renders defendant's
holdings adverse to plaintiff. It surely will not be held by the
Court that a railroad company can only acquire a possessory and

not a fee simple title by adverse possession. Yet the Court has
the arbitrary power to do so. It has already held that a railroad
can acquire the fee simple. *Watts* v. *Norfolk & Western R. Co.,*
39 W. Va. 204. In this case it holds that fee does not always
mean fee, especially when it would permit the adjacent land
to be threatened with drainage of oil and gas. That fee in a
conveyance does not mean fee if twenty years thereafter there is
a suspicion of oil and gas under the land. What next meaning
will be given to it is a matter of divine foreknowledge, for the
motive springs of human wisdom are as concealed within the
human breast as the mysterious sources of oil and gas are hidden
in the depths of the earth. Sometimes they are near the sur-
face, but oftentimes deep exploration is fruitless to find them.
The plaintiff himself admits that he agreed to convey the land
in fee simple and files a deed with his bill making such convey-
ance. The granting clause is as follows, after reciting the con-
sideration, "The said party of the first part * * * doth sell, as-
sign, transfer and convey unto the Ohio River Railroad Com-
pany all of those certain strips of land included within the Ohio
River Railroad Company's right of way through the tract of
land of the party of the first part. * * * The said land to
be used by the said company as a right of way for its railroad.
This is a complete grant in fee simple and cannot otherwise be
construed. Nor does naming the object for which the land is
conveyed prevent it from being such nor exclude its use for
other purposes. *Bolling* v. *Petersburg,* 8 Leigh 224; *Mercer
Academy* v. *Rusk,* 8 W. Va. 373; *Burnett* v. *R. R. Co.,* 4 Sneed
528; *U. S. P. L. Co.* v. *D. L. & W. R. Co.,* 42 L. R. A. 578. In
addition this Court on the admission of the plaintiff has already
adjudicated that the defendant holds the land in fee. *Uhl* v.
*Ohio R. R. Co.,* 47 W. Va. 59. Against the statute law of the
State, the admissions of the plaintiff, a deed executed too plain
for misunderstanding, the former adjudication of the Court as
to the same title, the adverse and exclusive possession of the
defendant for over fifteen years, the plaintiff out of possession
and control for a like period and the doctrine of *laches,* the
Court holds the words "fee simple" were intended merely to
convert an incorporeal easement into an estate of inheritance in
a corporation having no heirs, thereby meaning absolutely noth-
ing under the statute law, section 8, chapter 71, Code, to sub-
serve the speculative fears of plaintiff, which may turn out to

be purely imaginary. This is an attempt to dispose of "stuff that men's idle dreams are made of," purely visionary in nature. *Hall* v. *Vernon*, 47 W. Va. 295. All judicial construction should be made in subserviency:

*First*: To the supreme will of God, expressed through the dictates of conscience and known as the moral law.

*Second*: To the good of the people as dependent on submission to that will.

*Third*: The enactments of the law making power intended in spirit to be in harmony with the supreme will of God to promote the good of the people. And,

*Fourth*: Every word and phrase should be construed according to common acceptation and import as being consistent with the foregoing propositions and the expressed intention of the parties.

All these rules have been departed from in this case in the interest of individual covetousness. Hence my dissent.