MAYNARD et al. v. UNITED THACKER COAL CO.

(Circuit Court of Appeals, Fourth Circuit. October 7, 1919.)

No. 1728.

DEEDS ⟨§⟩124(1)—TITLE IN FEE SIMPLE CONVEYED ON PAYMENT OF PRICE.

A deed executed pursuant to a plan of grantor to divide his lands among his sons, conveying certain land to a son in consideration of his payment of stated sums to his sisters, for which a lien was reserved, "to have and to hold the same during his natural life, and then to descend to the heirs of his body," with the right, however, to sell to either of his brothers or sisters, the grantor and wife then granting and relinquishing to grantee "all their right, title, and interest in the foregoing named lands, to have and to hold the same forever, upon the fulfillment of the contract, and payment of the sums stipulated," *held*, on payment of the consideration named, to vest grantee with title in fee simple.

Woods, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Huntington; Benjamin F. Keller, Judge.

Suit in equity by William Maynard and others against the United Thacker Coal Company. Decree for defendant, and complainants appeal. Affirmed.

Certiorari denied 40 Sup. Ct. 119.

Ed. Noonchester, of Williamson, W. Va., for appellants.

Malcolm Jackson, of Charleston, W. Va. (Edward C. Lyon, of New York City, Cary N. Davis, of Huntington, W. Va., Buford C. Tynes, of Huntington, W. Va., Brown, Jackson & Knight, of Charleston, W. Va., and Campbell, Brown & Davis, of Huntington, W. Va., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is a suit instituted in the District Court of the United States for the Southern District of West Virginia, by the plaintiffs against the defendant, who seek to quiet their title to certain lands hereinafter referred to. The facts in this case may be epitomized as follows:

In the year 1870 Richard Maynard, his wife, Charlotte, uniting, in furtherance of a scheme for partitioning his landed estate among his numerous sons, conveyed to his son John B. Maynard the tract of land in the bill of complaint set out and described, by a deed, the construction of which is the subject of controversy in this suit. The appellants' contention is that the said deed vested the said John B. Maynard with a life estate only in the tract of land therein described. The appellee's contention is that the said deed vested the said John B. Maynard with a fee simple absolute title in said tract of land; the minerals and incidental rights and privileges pertaining to which passed by mesne conveyances unto, and are now claimed in fee simple absolute by, the appellee.

⟨§⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The deed upon which appellee relies is in the following language:

"This deed made this the 30th day of September, 1870, between Richard Maynor and Charlotty Maynor his wife of the first part and John B. Maynor of the second part both of the county of Logan and state of West Virginia witnesseth that the parties of the first part hath this day bargained and sold and by these presents doth grant bargain and sell unto the party of the second for and in consideration of the sum of fifty dollars to be paid to Parlee Stepp wife of Aaron Stepp by the first day of June 1871 and twenty five dollars to be paid by the first day of June 1871 to Sarah Ann Stepp wife of Hiram Stepp all the following named lands to wit lying and being in the county of Logan & State of West Virginia on Lick creek a tributary of the Tug fork of Sandy river and bounded as follows to wit—[here follows description] To have and to hold the same during his natural life and then to descend to the heirs of his body but the party of the first part grants to the party of the second part the right to sell the foregoing lands to either of his brothers or sisters the parties of the first part hereby reserves a line upon the lands for purchase money stipulated the said Richard Maynor & wife Charlotta Maynor hereby grants and relinquishes to the said John B. Maynor all their right, title and interest in the foregoing named lands to have and to hold the same *forever* upon the fulfillment of the contract & payment of the sums stipulated. Given under our hands and seals day and date mentioned."

The appellants, in their bill of complaint, pleaded all the facts pertaining to the aforesaid scheme of division of the landed estate of the said Richard Maynard among his children, filing therewith numerous exhibits, constituting both their own and the chain of title of the appellee. Thereupon the appellee moved to dismiss the appellants' bill of complaint, and the said motion was sustained by the court. Whereupon appellants filed a petition for a rehearing, to which were appended as exhibits numerous deeds from the said Richard Maynard and Charlotte, his wife, to their other sons, all made as a part of the general scheme of the said Richard Maynard for dividing his landed estate among his sons as aforesaid. The court having overruled appellants' petition for a rehearing, they now prosecute this appeal.

In order that we may properly interpret the provisions of the deed in question, we must, if possible, ascertain the intention of the grantor at the time the deed was executed. Therefore it is necessary to consider the situation, the circumstances surrounding the transaction, and the purpose of the grantor; in other words, the situation which confronted the grantor and his wife (who, no doubt, were well advanced in years), and what it was they wished to accomplish when they executed this deed, as well as the deeds to the other six sons. Why were the peculiar and somewhat inconsistent terms of this deed employed? There must have been some substantial reason prompting the grantor to draft the deed in the manner he did.

It appears that prior to the year 1870 Richard Maynard was the owner in fee simple absolute of a large contiguous body of land, aggregating about 1,100 acres, situated on Lick creek, a tributary of the Tug fork of Sandy river, then known as Logan county, W. Va. It further appears that he was the father of ten children, seven of whom were sons and three daughters, the daughters being Harriett Maynard, Sarah Ann Stepp (wife of Hiram Stepp), and Parlee Stepp (wife of Aaron Stepp).

The facts and circumstances clearly show that the father for some reason was of opinion that it would be best to convey the real estate to the sons, and it further appears that it was his desire to provide for his daughters; hence the requirement that his sons pay to each of his daughters such amounts as would in the aggregate be equivalent in value to the share of land they would have received, had the land been apportioned equally among all the sons and daughters. That this was the grantor's purpose in partitioning his lands is evidenced by the fact that he undertook to retain liens on the various tracts until the sons should pay to the three daughters the respective amounts therein provided.

It must be admitted that the deed was inartificially drawn and is somewhat contradictory in its terms; but, while this is true, the provisions are such as to warrant us in assuming that it was his intention not only to convey the land to his sons, but at the same time secure such amounts as were to be paid to the daughters. Instead of conveying the land outright to his sons and then requiring them in turn to execute to him deeds of trust on the lands in question to secure the payment of the notes to his daughters, he undertook in a simple way to charge the same with a lien for the several amounts which he exacted of them to be paid as a condition precedent to investing them with the fee simple title to this property.

After restricting the right of alienation, except as to the brothers and sisters, the grantor then undertook to reserve a lien upon the lands, as we have said, for the purchase money stipulated to be paid to the daughters, which is as follows:

"* * * The said Richard Maynor and wife Charlotta Maynor hereby grants and relinquishes to the said John B. Maynor all their right title and interest in the foregoing named lands to have and to hold the same *forever* upon the fulfillment of the contract & payment of the sums stipulated."

The next question is as to whether the grantees complied with the stipulation which required that they should pay to the daughters the respective sums fixed by the grantor. The learned judge who tried this case in the court below, in referring to this phase of the case, said:

"It is conceded that the purchase price mentioned in the deed has been fully paid."

Therefore there has been a literal fulfillment of the requirements of the grantor as a condition precedent to the grantees becoming invested with fee simple titles for these lands. It would be contrary to all rules of construction to ignore the concluding clause of the deed, wherein the grantors relinquished to the grantee all their right, title, and interest in these lands, which provides that the grantee *shall hold the same forever*. The learned judge, in construing this deed, among other things, said:

"After a careful study of the context of this deed, it seems clear to me that Richard Maynard, desiring to divide his property among his children, intended to convey to John B. Maynard the property herein involved in fee, upon the compliance by him with the terms and conditions therein set out. In other words, a life estate only (and that subject to the lien retained) was to vest in the grantee in the event of his failure to fulfill the conditions therein

imposed, viz. the payment of the consideration mentioned to the grantee's sisters, which evidently constituted, or was to constitute, a portion of their division of the property; and upon the payment of the consideration set out, a fee simple estate should vest. In determining the intention of the grantor, courts look not only at the words used, but to the situation, and circumstances of the parties as well. The modern rule governing construction leans toward the intention of the maker, overriding mere form and technical words, and now it may be said that the intention must govern and rule the construction in deed as well as in wills. Moreover, under the rules governing the construction of deeds, where the context is susceptible of two constructions, that which is more unfavorable to the grantor is accepted, and restrictions contained in such instruments are construed most strongly against the maker [Williams v. South Penn Oil Co.] 52 W. Va. 181 [43 S. E. 214, 60 L. R. A. 795]. [Deer Creek Lumber Co. et al. v. Sheets et al.] 75 W. Va. 21 [83 S. E. 81]. In the case of Railway Company v. Honaker, 66 W. Va. 149 [66 S. E. 104, 27 L. R. A. (N. S.) 388], the court held that when a deed contains a restraint upon alienation, but is an attempted grant in fee, that conditions or restrictions absolutely restraining alienation when repugnant to the estate created, are void as against public policy."

The deed contains provisions in the habendum clause which, upon a casual consideration, might cause one to think that it was the intention of the grantor to provide only for a life estate and then by descent to limit it to the first taker. Such would be true, were it not for the fact that later on in the deed is to be found a provision which clearly shows that, upon compliance on the part of the grantee with certain stipulations contained therein, he would immediately become invested with a fee-simple title to the premises in question.

In the case of Mauzy et al. v. Mauzy et al., 79 Va. 537, wherein the principle involved in this controversy was passed upon, the court, among other things, said:

"At common law, in case of repugnancy between the premises and the habendum in deeds to natural persons, the latter gave way to the former; but as in this case the deed conveys the fee only by virtue of the statute (Code 1873, c. 112, § 8), which provides that when real estate is conveyed the entire interest of the grantor shall be construed to be conveyed, unless a contrary intention appears by the conveyance, the whole deed must be looked to, in order to ascertain and give effect to the intention of the parties. * * * Looking, then, to the whole deed and the surrounding circumstances, we think the conveyance was to Mrs. Mauzy, absolutely and exclusively. * * * The consideration flowed from her alone, and, her husband being insolvent, the burden of maintaining the family was cast upon her. The language of the habendum of the deed already quoted merely indicates the motive for the conveyance to her, which was to provide a home and a means of support for herself and children, free from the control of her husband, and secure from the claims of his creditors."

The following cases are in point: Higgins v. Round Bottom Coal Co., 63 W. Va. 218, 59 S. E. 1064; Morgan v. Morgan, 60 W. Va. 327, 55 S. E. 389, 9 Ann. Cas. 943; Culpeper National Bank v. Wrenn, 115 Va. 55, 78 S. E. 620; Uhl v. Railroad Co., 51 W. Va. 106, 41 S. E. 340; Williams v. South Penn Oil Co., 52 W. Va. 181, 43 S. E. 214, 60 L. R. A. 795; Weekley v. Weekley, 75 W. Va. 281, 83 S. E. 1005.

To hold that only a life estate was intended to be granted would be to ignore the plain provisions of the deed and the facts and circumstances surrounding its execution; in other words, to do this, we would

be compelled to ignore the plain rules of construction applying to suits like the one at bar.

We have read and carefully considered the cases relied upon by appellants, but are of opinion that they do not apply to the suit at bar. Therefore we are impelled to the conclusion that the rulings of the court below are highly proper, and that the decree should be

Affirmed.

WOODS, Circuit Judge (dissenting). United Thacker Coal Company claims the minerals in the land in dispute under successive conveyances from John B. Maynard, deceased. The plaintiffs, alleging that John B. Maynard had only a life estate, with remainder at his death to them as the heirs of his body, ask that the claim of the defendant be declared a cloud upon their title. The issue depends upon the meaning of a conveyance from Richard Maynard to John B. Maynard. The District Court and a majority of this court hold, on a motion to dismiss the bill, that upon payment by him of the purchase money mentioned in the deed John B. Maynard took a fee simple absolute, and that therefore the defendant has good title to the minerals. I cannot resist the conclusion that under the deed he took only a life estate, with remainder to the heirs of his body, and that the plaintiffs, heirs of his body, are entitled to the relief of removal of defendant's claim as a cloud on their title. Omitting the description of the land the deed was as follows:

"This deed made this the 30th day of September 1870 between Richard Maynor and Charlotty Maynor his wife of the first part and John B. Maynor of the second part both of the county of Logan and state of West Virginia witnesseth that the parties of the first part hath this day bargained and sold and by these presents doth grant bargain and sell unto the party of the second for and in consideration of the sum of fifty dollars to be paid to Parlee Stepp wife of Aaron Stepp by the first day of June 1871 and twenty-five dollars to be paid by the first day of June 1871 to Sarah Ann Stepp wife of Hiram Stepp all the following named lands to wit * * * To have and to hold the same during his natural life and then to descend to the heirs of his body but the party of the first part grants to the party of the second part the right to sell the foregoing lands to either of his brothers or sisters the parties of the first part hereby reserves a lien upon the lands for purchase money stipulated. The said Richard Maynor & wife Charlotta Maynor hereby grants and relinquishes to the said John B. Maynor all their right title and interest in the foregoing named lands to have and to hold the same forever upon the fulfillment of the contract & payment of the sums stipulated."

This was one of five deeds similar in language by which Richard Maynard divided a large body of land among his sons, providing that they should pay as consideration the sums mentioned therein to their sisters. Virginia and West Virginia abolished the rule in Shelley's Case by this statute:

"Where any estate, real or personal, is given by deed or will to any person for his life, and after his death to his heirs, or to the heirs of his body, the conveyance shall be construed to vest an estate for life only in such person, and a remainder in fee simple in his heirs or the heirs of his body." Code Va. 1860, c. 116; Code W. Va. § 3749.

As was conceded at the argument, if we leave out of view the last sentence, the deed clearly meant: (1) That John B. Maynard should

have a life estate only; (2) that at his death the heirs of his body should have the remainder in fee simple; (3) that John B. could convey the entire fee in the land to any of his brothers or sisters, but to them only; (4) that the life estate of John B. and the remainder in the heirs of his body, and the title in any brother or sister to whom John B. might convey, should be subject to the lien for the purchase money in favor of the grantor for the benefit of his daughters; (5) that the remainder to the heirs of the body of John B. could be defeated only by his conveyance to brothers or sisters, or by sale under the lien for the purchase money; (6) that upon payment of the lien by John B. or the remaindermen the interest of John B. would still be only a life estate, coupled with the right to convey to his brothers or sisters the fee. Thus the life estate of John B. and the interest of the heirs of his body was explicitly fixed by language too plain for doubt, without the least implication of an intention that the remaindermen should take only in case John B. should fail to pay the purchase money. As an incident of this interest of the remaindermen, they as well as John B. had the right to pay the purchase money and discharge the lien. But obviously John B. could not defeat the interest of the remaindermen by paying the purchase money, any more than they could defeat his life estate by paying it. The only effect of the payment of either would have been the right of contribution.

It is said, however, that this carefully and clearly expressed scheme of the grantor, and the interests and rights so clearly and carefully conferred on the remaindermen, the grantor immediately turned upon and destroyed by the last sentence of the deed—that by this last sentence he cut out the remainder he had just put in. The contention is that the express grant to John B. of a life estate was enlarged to a fee simple, and the express grant of the remainder to the heirs of his body defeated, because in the closing sentence of the deed the grantors say they—

"grants and relinquishes to the said John B. Maynor all their right title and interest in the foregoing lands to have and to hold the same forever upon the fulfillment of the contract and payment of the sum stipulated."

There is the strongest presumption against the intention of the grantor to destroy the remainder so explicitly created. The grantor gave a life estate to John B., subject to the payment of the purchase money; he could not have intended in the next sentence of the same instrument to give him a fee simple, subject to the payment of the purchase money. The only natural construction is that the grantor in the preceding clause of the deed, relating to the estate and interest to be conferred, fixed the quality and quantity of the estate that should pass to John B. and the heirs of his body, and the lien upon it. Having said plainly all that could be said on that subject to make his intention perfectly clear, his mind leaves it and adverts to the complete relinquishment of his own interest on payment of the purchase money, and he then leaves out repetition of the limitation of John B.'s interest to his own life.

This conclusion is strongly supported by the deeds of the same date of Richard Maynard to four other sons, filed with the petition for.

rehearing in the District Court. The deeds show on their face an intention to treat all the sons alike, and to convey a life estate to each, with remainder to the heirs of his body. The language is slightly varied, doubtless because the draftsman, after writing the first deed, relied on his memory for the language. For example, this language is used in the deed to his son, Allen Maynard:

"To have and to hold the same his natural life then to descend to the heirs of his body. But the parties of the first part hereby grant unto the parties of the second part the privilege of selling the same to any of his brothers or sisters & making a good and lawful title to the lands named in the foregoing the party of the first part reserves a vendors lien on the said lands for the payment of the amount named above and for the support stipulated the parties of the first part hereby relinquishes to the parties of the second part all their right title and interest in the said lands to have and to hold the same forever upon the condition above named and stipulated."

It would hardly be contended for a moment that "the condition above named and stipulated" referred only to the payment of the purchase money, and that under this deed Allen could have defeated the interest of the remaindermen by paying off the lien. Any difference in the construction of the several deeds must rest on shadowy verbal distinctions applied to deeds drawn by a plain untutored man.

Reducing the matter to its simplest form, in the first clause and the last the grantor used general words of grant to each son, without pausing to express the limitation for his life and then to the heirs of his body, for the reason that in the intervening clauses he had so clearly set out the limitation of the son's interest to his life and to the heirs of his body after his death, subject to the lien for the purchase money, that it could not be misunderstood.

This conclusion is entirely consistent with the canons of construction and the principles of law. The common-sense rule that in deeds as well as wills the intention of the parties, ascertained by consideration of the whole instrument and the surroundings, must be given effect, is nowhere more distinctly stated and consistently maintained than in the Supreme Court of West Virginia. In Uhl v. Ohio R. R. Co., 51 W. Va. 106, 41 S. E. 340, and Weekley v. Weekley, 75 W. Va. 281, 83 S. E. 1005, the rule was stated and applied to deeds very similar in expression to that before us. I am unable to find anything in the cases cited by defendant's counsel supporting the contention that John B. Maynard took more than a life estate. The rules relied on in the opinion of the District Court and the majority of this court, that unless a contrary intention appears a deed should be construed to convey the entire estate, and that a deed is to be construed most strongly against the grantor, have no application, for there is no dispute that under any construction the grantor parted with his entire estate, subject to the lien for the purchase money.