# CHARLESTON.

CLINE COLA BEVERAGE COMPANY v. RALEIGH COCA COLA BOT-
TLING WORKS.

(No. 5320.)

Submitted May 12, 1925.  Decided September 8, 1925.

1. CONTRACTS—*Neither Alleged Declaration Nor Direct Evidence
    of Intention of Parties to Written Contract Can be Con-
    sidered in Construing it.*

    Neither alleged declarations, nor direct evidence of inten-
    tion of the parties to a written contract can be considered in
    construing the instrument.  (p. 599).

2. SALES—*Contract Concerning Sale of Beverage Contained in
    Bottles Held Not to Pass Title to Empty Bottles and
    Crates.*

    A case in which the trial court improperly construed the
    written contracts under consideration.  (p. 603).

Error to Circuit Court, Fayette County.

Action by the Cline Cola Beverage Company against the
Raleigh Coco Cola Bottling Works.  Judgment for defend-
ant, and plaintiff brings error.

*Reversed and remanded.*

*George Love,* for plaintiff in error.

*Hubard & Bacon,* and *W. H. File,* for defendant in error.

LITZ, JUDGE:

Prior to December 20, 1923, the plaintiff, Cline Cola Bev-
erage Company, a corporation, with its plant at Mount Hope,
Fayette County, was engaged in the manufacture and sale
of ice, ice cream, and pop, and also in the sale of a near-beer
beverage which it purchased from the George Wiedemann
Company, of Newport, Kentucky.  The plaintiff owned the
crates and bottles, which it used in the manufacture and sale
of pop.  Its customers were required to deposit with it $.50
a crate for the return of the pop bottles and crates, and
$1.00 a crate for the near-beer bottles and crates.  The Wiede-
mann Company, however, accepted from the plaintiff, in lieu
of a money deposit, a bond in the penalty of $1620.00 to se-

cure payment for unreturned crates and bottles, valued at $1.05 per crate, in which the near-beer shipments were made by the former to the latter.

By deed of December 20, 1923, the Cline Cola Beverage Company and its stockholders sold and conveyed to the defendant, Raleigh Coca Cola Bottling Works, "all of the fixtures and personal property, situated at the bottling plant" of the grantor "and otherwise, as hereinafter mentioned, in the city of Mount Hope, Fayette county, West Virginia, and more particularly described as follows:

> "FIRST: All of the machinery, fixtures and personal property located in, on or about the bottling plant, ice plant and ice cream plant now being operated by the parties of the first part in the building located on the real estate this day conveyed unto said party of the second part by William Raies and wife situated as above described, and all other assets owned by Cline Cola Beverage Company or in which it has an equitable interest and are used in connection with its plants aforesaid, (except its books and accounts receivable) and consisting in the main of all machinery and equipment of said plants, crates, bottles, ice cream cans, tubs, all extracts and other supplies, fixtures of every kind, including office fixtures and equipment, trucks and all other vehicles, equipments, appurtenances, supplies and appliances, whether located on and upon said real estate or not, owned by the said Cline Beverage Company, or in which it has an equitable interest.
>
> "SECOND: All crates and bottles now in the possession of the customers of said party of the first part owned by the said Cline Cola Beverage Company, or in which it has an equitable interest, together with the right of the party of the second part to redeem such bottles and crates as deposits shall have been made thereon by the respective customers by paying unto such customers fifty (50) cents per crate; and where no deposit has been made by any particular customer nothing shall be paid by the said party of the second part as a condition precedent to its right to become completely invested with the title and possession of the

crates and bottles in the possession of such customers.

"THIRD : All unexpired insurance policies now in force on the property aforesaid, or any part thereof, including the buildings located upon said real estate, and upon the execution and delivery of this instrument such policies shall be assigned and transferred unto the party of the second part, and any unpaid premiums thereon shall be paid by the party of the first part".

Another paper, executed at the time, follows:

"Dec. 20, 1923.

"In consideration that Raleigh Coca Cola Bottling Works has this day purchased of William Raies and Rosa Raies, his wife, the three lots on which Cline Cola Beverage Company is now operating its plant in the Town of Mt. Hope, W. Va., and in the further consideration that said Raleigh Coca Cola Bottling Works purchase all the assets of Cline Cola Beverage Co., and pay the total consideration at this time, the undersigned William Raies does hereby covenant and agree as president of Cline Cola Beverage Co., and in its behalf, with Raleigh Coca Cola Bottling Works to refund to all of the customers of Cline Cola Beverage Co., with whom it has done business this year, such deposits as each respective customer has made on all crates and bottles, or satisfy such customers by paying any sum less than said deposits.

"This agreement to be carried out within next two weeks.

"It is further agreed that R. C. B. Wks. shall send a representative with Wm. Raies to visit said customers and such customers shall sign receipts showing that they hold so many crates subject to the order of R. C. C. B. Wks., and when that is done Cline Cola Bev. Co., will be released from this contract. (Thayer & Layland excluded from operation of this agreement.)

"CLINE COLA BEV. CO.,
by Wm. Raies."

At the time of the sale and transfer by the plaintiff to the defendant there were in the possession of the plaintiff and its customers about two carloads of crates and empty bottles belonging to the George Wiedemann Company, in which it

had shipped near-beer beverage to the plaintiff. Soon after taking possession of the plant, the defendant returned to the George Wiedemann Company a carload of these empty bottles and crates, requesting credit therefor on beverage purchases theretofore made by the former. from the latter. The Wiedemann Company refused the request of defendant, and credited the bond of the plaintiff $1171.20, the value of the crates and bottles at $1.05 per crate. The defendant having refused to return to the Wiedemann Company the remaining bottles and crates, or to permit the plaintiff to do so, the plaintiff instituted this action in detinue for the possession thereof. The declaration contains two counts. In one the plaintiff seeks recovery in its own right, and in the other as bailee of the Wiedemann Company.

Upon the institution of the suit the plaintiff gave bond and took possession of the property; thereafter returning it to the Wiedemann Company.

The jury having returned a verdict for the defendant, fixing the value of the property at $1405.10, judgment was entered thereon. The plaintiff brings error.

William Raies, president and general manager of plaintiff company, testified that it was understood between the parties before and after the execution of the deed and written contract that the Wiedemann crates and bottles were to be excluded from the sale. Witnesses for defendant were then permitted, over the objection of the plaintiff, not only to deny such agreement, but further to testify that it was not the *intention* of the parties to except these bottles and crates from the sale.

The plaintiff now questions the admissibility of each phase of this testimony as violating the parol evidence rule. If the deed or supplemental contract is ambiguous, oral evidence would be admissible to show the situation of the parties, the circumstances surrounding them, and their subsequent acts in pursuance of the writings, to aid the court in arriving at the intention of the parties; but evidence cannot be received to show their declarations, conversations or interlocutions before or after the execution of the papers. *Lewis* v. *Flour &*

*Feed Co.*, 90 W. Va. 471, 477; *Snyder* v. *Robinette*, 78 W. Va. 88; *Uhl* v. *Railroad Co.*, 51 W. Va. 106. The testimony complained of was certainly improper in so far as it attempted to give the alleged or supposed intention of the parties.

Error is also assigned because the trial court granted the defendant several instructions, in effect and substance telling the jury that the deed and supplemental writing evidence a sale and transfer by the plaintiff to the defendant of the property in controversy, and that the jury should find for the defendant unless plaintiff had proved by a preponderance of the evidence a contrary intention or agreement of the parties.

The defendant would sustain the rulings below upon two theories: (1) that the Wiedemann crates and bottles belonged to the plaintiff at the time of the sale, and, therefore, passed to the defendant under the description contained in the deed and supplemental agreement. For this contention reliance is placed upon the provisions of the written contract between the George Wiedemann Company and plaintiff for the sale by the former to the latter of the near-beer beverage, as follows:

> "In consideration of a surety bond executed to the George Wiedemann Company in the sum of $1620.00, the said party of the first part (the Wiedemann Company) agrees to extend to the party of the second part (plaintiff) credit covering two cars of cases and bottles. Upon termination of this agreement said second party agrees to reimburse said first party in the full value of all cases and bottles originally received from said first party and which may be outstanding at· the time of the termination of said contract, at the rate of $.75 per case and $.30 per dozen small bottles; the George Wiedemann Company's count as to the number of cases and bottles returned to prevail. The George Wiedemann Company will not accept odd bottles nor ware bearing the brands of other companies. The George Wiedemann Company will pay freight on empty packages returned to it in car load lots, minimum 18,000 lbs., from any point in the territory herein

allotted, to Newport, Ky., but will make no allow-
ance whatsoever for drayage.   *   *   *   This agree-
ment is made during the pleasure of the parties
thereto and should either party desire to discon-
tinue same, they shall give the other party thirty
days notice thereof in writing''.

There is certainly no foundation from the parts quoted
or the remainder of the contract, for the contention that
Cline Cola Beverage Company became vested with title to
the cases and bottles in which the Wiedemann Company
shipped to it the near-beer beverage. There was a sale of the
beverage with the use of the bottles and crates for its dis-
tribution.  The crates and bottles were never billed to the
vendee and it was merely required to account for those not
returned.

(2)  The defendant further contends that if the language
and terms of the deed are insufficient to include the Wiede-
mann crates and bottles in the sale and transfer, then the
supplemental agreement, which was admittedly entered into
not as an independent contract, but in explanation of the
deed, embraces this property.

According to the evidence for defendant, the supplemental
agreement was made for the purpose of relieving the pur-
chaser, Raleigh Coca Cola Bottling Works, from payment to
customers of the plaintiff of deposits made by them with it
for the return of bottles and crates which were being con-
veyed and transferred from plaintiff to defendant by the
deed.  The deed, which had been prepared by the defendant
before the agreement, gave to defendant the right to ''redeem
such bottles and crates as deposits shall have been made
thereon by the respective customers, by paying unto such
customers $.50 per crate''; and further provided that,
''Where no deposit has been made by any particular cus-
tomer, nothing shall be paid by the said party of the second
part (defendant) as a condition precedent to its right to be-
come completely invested with the title and possession of the
crates and bottles in the possession of such customers''.  In
harmony with the general grant of all the property and assets
belonging to the vendor or in which it had an equitable in-

terest, this provision of the deed was clearly limited to the pop crates and bottles owned by the plaintiff, as the amount deposited by the customers for the return of these bottles and crates was $.50 per crate, while the sum of $1.00 was deposited for the return of the Wiedemann crates and bottles.

The supplemental agreement by recitation shows that it was made with reference only to the *assets* of the plaintiff, and therefore was not intended to pass title to other property which it did not own and was not included in the deed. It added to or modified the deed only in requiring the plaintiff to redeem the property which it owned and was selling to defendant.

Among the many circumstances bearing out this construction of the deed and supplemental agreement, are the following:

(1)   In September, 1923, the defendant with a view of purchasing plaintiff's plant and assets employed an accountant to make an audit or inventory thereof, which did not include the crates and bottles in controversy.

(2)   Thereafter, November 20, 1923, defendant obtained from the plaintiff a written option to purchase all the assets ''owned by Cline Cola Beverage Company, or in which it has an equitable interest, and are used in connection with its plant aforesaid, except its books and accounts receivable, and consisting in the main of all machinery and equipments of said plants, crates, bottles, ice cream cans, tubs, all extracts and other supplies, fixtures of every kind, including office fixtures and equipment, trucks, and all other vehicles, equipments, appurtenances, supplies and appliances, whether located on and upon said real estate or not, owned by the said Cline Cola Beverage Company, or in which it has an equitable interest as aforesaid''.

(3)   As these crates and bottles bear the stamp of the Wiedemann Company, which was required to accept them only in discharge of plaintiff's obligation for their return, they would have been of little if any value to the defendant, while the plaintiff was required to pay the Wiedemann Company $1.05 per crate for all it did not return.

(4)   The shipment of the carload of bottles and crates by the defendant to the Wiedemann Company in the absence of sale by the defendant to the Wiedemann Company, is evidence of their ownership by the Wiedemann Company, and that they were being returned under the contract between it and the plaintiff.

The defendant emphasizes the fact that soon after the sale and transfer, William Raies, as president and general manager of plaintiff company, accompanied by a representative of defendant, visited the various customers and redeemed from them the crates and bottles on which they had made deposits with plaintiff, at the time directing the customers by writing to deliver all crates and bottles to the defendant.  Raies gives a reasonable explanation of the matter by stating that plaintiff, having sold all of its equipment, had no means by which to collect the Wiedemann crates and bottles, and therefore arranged with defendant to assemble these for shipment to the Wiedemann Company while collecting the pop bottles and crates for itself.

G. A. Mohler, general manager of the defendant company, and who represented it in the transactions here involved, testifies in its behalf that the writings under consideration constitute the only agreement between the parties, which, properly construed, evidence a sale of the assets of the plaintiff to defendant, discharged of the claims of customers for deposits made on pop bottles and crates constituting a part of said assets.  The deed, as already shown, conveys only the property owned by the plaintiff or in which it had an equitable interest, and the supplemental written agreement specifically recites the sale and transfer of such property. There is certainly no presumption that a contract of sale includes property which it does not mention; and especially so where the writing, as in this case, has been prepared by the party in whose favor the presumption is sought.

The trial court therefore erroneously construed the writings as passing title to the property in controversy in which the plaintiff never had any interest; and in permitting the witnesses for the defendant to give direct testimony of the

supposed intention of the parties. It should have directed a verdict for the plaintiff.

The judgment complained of is reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed and remanded.*