# CHARLESTON.

.WILLIAMS *v.* SOUTH PENN OIL CO.

Submitted January 22, 1902.   Decided December 6, 1902.

1. CONSTRUCTION OF STATUTE.

   The word "surface" when specifically used as a subject of conveyance has a definite and certain meaning, and means only that portion of the land which is or may be used for agricultural purposes.   (p. 186).

2. CONVEYANCES.

   M. and D. jointly owned in fee simple a tract of 180 acres of land.   M. conveyed to W. "All the coal in, on, or underlying the undivided one-half" of the tract and granted to W. the

right to make and maintain on said tract of land such open-ings as might be necessary for ventilation, for drainage and for taking out all of the coal without any liability for injury to the surface of said land, or anything thereon, by reason of the mining of said coal, and the right to remove same, with rights-of-way, etc. D. conveyed to W. his undivided one-half of the tract in fee.. W. conveyed to M. "All the surface of the one hundred and eighty acres undivided that was so con-veyed to him by said D." retaining the right to make and main-tain on said tract of land such openings as might be necessary for ventilation, for drainage and for the taking out of all the coal without any liability for injury to the surface of the land or anything thereon by reason of the mining of said coal, and the right to remove same, and rights-of-way, etc. *Held:* The said last conveyance from W. to M. was an express grant of the surface only and severed it from all underlying strata. (p. 186).

3. JOINT PROPERTY.

The coal and gas in and under the said tract of 180 acres of land is the joint property of W. and M. or their heirs, assigns or grantees. (p. 190).

4. CONSTRUCTION OF WORDS.

It is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning. (p. 189).

Appeal from Circuit Court, Harrison County.

Action by John J. Williams against South Penn Oil Com-pany and others. From a judgment for defendants, plaintiff appeals.

*Affirmed.*

MILLARD F. SNIDER, for appellant.

FLEMING & FLEMING, C. W. RUSSELL and DAVIS & DAVIS, for appellees.

McWHORTER, JUDGE:

By decree of the circuit court of Harrison County entered on the 27th day of May, 1890, in the case of W. J. Deison and John W. Monroe against Cruger W. Smith and others for the partition of three hundred and ninety-seven acres of land, there was assigned to said Deison and Monroe, the plaintiffs, in fee simple and in severalty, a tract of one hundred and eighty acres known as lot No. 1, in the partition. On the 20th day of August, 1891, John W. Monroe and wife in consideration of

one thousand two hundred dollars conveyed with general warranty, to Benjamin Wilson "All the coal in, on or underlying the undivided one-half of a certain tract of land situated in said county, containing one hundred and eighty acres," and granting also to said Wilson the right to make and maintain on said tract of land such openings as might be necessary for ventilation, for drainage and for the taking out of all the coal without any liability for injury to the surface of said tract of land, or anything thereon, by reason of mining and removing the coal; and all rights-of-way and privileges necessary to the proper mining and removing of the coal; and on the 11th day of September, 1891, William J. Deison and wife, in consideration of one thousand two hundred dollars conveyed with covenants of special warranty to said Wilson their undivided one-half in fee simple of said one hundred and eighty acres of land. On the 28th day of September, 1891, said Benjamin Wilson conveyed to John W. Monroe the surface of the said one hundred and eighty acres, undivided, which was conveyed to him by said Deison in the following words: "Now this deed further witnesseth, that Wilson does hereby grant to the said John W. Monroe all the surface of the said one hundred and eighty acres, undivided, that was so conveyed to him by said Deison. This conveyance is for a valuable consideration, but the said Wilson retains the right to make and maintain on said tract of land such openings as may be necessary for ventilation, for drainage, and for taking out of all the coal, without any liability for injury to the surface of said tract of land, or anything thereon, by reason of the mining of said coal, and the right to remove same, and the right to him and his heirs and assigns, and to all persons claiming by, through and under them, to enter in, upon and under said tract of land for the purpose of mining and removing the coal from said land, the right to make and maintain such openings thereon, and the right to pass over, through or under said tract of land by railway or otherwise to reach any other lands belonging to him or his heirs or assigns, and all persons claiming by, through or under him. This conveyance and six hundred dollars, cash paid by Wilson to Monroe, makes up the consideration paid by Wilson for Monroe's undivided one-half interest in the coal underlying the one hundred and eighty (180) acres aforesaid,

which said Monroe has conveyed to Wilson, with certain privileges in his deed specified and above referred to." On the 7th of April, 1893, John W. Monroe and his wife conveyed the said one hundred and eighty acres of land, to John J. Williams an undivided two-thirds interest and to William T. Williams undivided one-third interest, excepting and reserving therefrom the "Coal in and under the same as fully as the same has been heretofore conveyed, together with all mining rights and privileges granted and reserved in said deeds from Monroe to Wilson and from Wilson to Monroe, respectively, to all which deeds references are here made." On the 12th day of June, 1899, Benjamin Wilson and others, leased to the South Penn Oil Company, its successors or assigns "For the sole and only purpose of mining and operating for oil and gas and of laying pipe lines, building tanks," etc., four several tracts of land containing in the aggregate about five hundred acres, including the tract of one hundred and eighty acres; the lessee to deliver to the credit of the lessors, their heirs or assigns free of cost, in the pipe lines the equal one-eighth part of all the oil produced and saved from the leased premises and to pay two hundred dollars per year for the gas from each and every gas well drilled on the premises, the product from which should be marketed and used off the premises. On the 21st day of June, 1899, John J. Williams and W. T. Williams, leased for the same purposes to the said South Penn Oil Co., the said tract of one hundred and eighty acres of land, the lessee covenanting "To deliver to the credit of the first parties, their heirs or assigns, free of cost, in the pipe line to which it may connect its wells, their proportionate share of the equal one-eighth part of all oil produced and saved from the leased premises" and "To pay their proportionate share of two hundred dollars per year for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises." At the November Rules, 1900, John J. Williams and William T. Williams filed their bill against the South Penn Oil Co., the Eureka Pipe Line Co., Benjamin Wilson, and others, in the circuit court of Harrison County, claiming to be the sole owners of the one-eighth royalty of the oil and gas in the one hundred and eighty acres and praying that it might be so decreed to them, and that there being no contention or controversy as to

their being entitled to the one-half of said royalty, that the defendant, South Penn Oil Co., be required to deliver up to them the one-half of royalty or one-sixteenth of the oil. The defendant, South Penn Oil Co., filed its answer denying the allegation of the bill that it entered upon the said tract of land exclusively under the lease made by the plaintiffs, but that it entered under the said lease and also under the Wilson lease, denied that it had failed or refused to sign the division order or orders under which the Eureka Pipe Line Co., could and would have delivered the one-eighth of royalty oil of all produced and being produced from the leased premises; but it was the truth that it had refused to sign such order as demanded by plaintiffs under which they would have received the whole of the one-eighth royalty, and denied that it had covenanted in its lease to deliver the one-eighth royalty to plaintiffs; that it did not pretend to decide and say that plaintiffs might not be entitled to some part of said oil but if they had title to some part thereof that such part, if anything, was less than the amount or part claimed by them in their bill, and asked that plaintiffs be required to show to the court what interest they had in the royalty in the oil, as well as their proportionate share of two hundred dollars per year for the gas wells, and expressed their readiness to deliver the one-eighth royalty as the court might direct it to be distributed among the persons entitled to the same. Defendant, Benjamin Wilson, filed his separate demurrer and answer to the bill claiming to be entitled, with his co-lessors, to one-half the royalty and price of the gas produced from said one hundred and eighty acres and denied that he had conveyed to the said Monroe anything more than the surface of the one equal undivided moiety of said one hundred and eighty acres. On the 7th of February, the answers of the several defendants were filed to which plaintiffs replied generally and joined in the demurrer and there being no adverse claim to one-half of the royalty of the oil and one-half of the gas rental claimed by plaintiffs it was ordered to be delivered to them and the residue of the oil was directed to remain in the pipe lines until further orders from the court. On the 23d of May the death of defendant Benjamin Wilson was suggested and the cause revived in the name of his heirs-at-law, and on the 2d of October, 1901, the cause was finally heard and the

court overruled the demurrer and divided the one-half of the royalty oil, being one-sixteenth, and the gas rental among the defendants in the proportions to which they were entitled, and being of opinion that the plaintiffs were not entitled to the relief prayed for in their bill the same was dismissed, and judgment was entered against the plaintiffs for costs; from which decree plaintiffs appealed. The question involved in the case seems to turn upon what was conveyed by the deed of September 28, 1891, from Benjamin Wilson to John W. Monroe. After the deed from Deison to Wilson the latter was the owner of all the coal and the one undivided half of the residue of the whole tract in fee. Wilson by his deed of September 28, 1891, conveyed to John W. Monroe "All the surface of the said one hundred and eighty acres, undivided, that was so conveyed to him by said Deison."

Counsel for the appellants insists that the word surface or a conveyance of the surface of the land carries with it every part of the land not specifically excepted, and files a very ingenious as well as able brief in support of his position; but it is well settled that the different materials which go to make up land may be severed by reservation or express grant. In Anderson's Dic. of Law at page 677, it is said: "The law recognizes horizontal divisions of land. The severance of the surface from the underlying strata may be created either by reservation or express grant, as if the mineral right is an independent interest. Thus one person may own the iron ore, another the coal, another the limestone, and another the petroleum and another the surface." *Caldwell* v. *Copeland,* 37 Pa. 427. The very fact of conveying the surface specifically carries with it the idea of an express grant alone of the surface and severs it from every other material composing the land. A conveyance of any specified interest in the land, such as the coal or the limestone or the iron ore or the surface, is an express grant and severs such interest from every other part of the land, and the title to all the residue remains in the grantor just as any part of the land would, if reserved specifically in a deed conveying the land. In *Knight* v. *Coal and Iron Co.,* 47 Ind. 105, 17 Am. Reports 692, and at page 695 it is said in the opinion: "The owner in fee simple has the power to sell and convey his mines or any stratum by deed or grant so as to create one free-

hold in the soil and another in the mines, and, as a conclusion from the premises, a freeholder of an estate of inheritance may, by deed, create as many freeholds beneath the surface as he can properly designate. Thus, one person may own the surface, another may be entitled, by conveyance, to the iron, another to the limestone, and still another to a stratum of coal; for coal and minerals in place are land and are subject to a conveyance as such, and the owner of the mineral right has a corporeal hereditament distinct from the surface;" and cites *Caldwell* v. *Fulton,* 31 Pa. St. 475; *Harlem* v. *Lehigh,* 35 Pa. St. 387; Brainbridge on Mines 7, 8, 9, and 10; *Armstrong* v. *Caldwell,* 53 Pa. St. 284; Addison on Torts, 116; *Whittaker* v. *Brown,* 46 Pa. St. 177; *Caldwell* v. *Copeland,* 37 Id. 427 and *Barns* v. *Mawson,* M. & S. 77. Section 29, Bryan on Petroleum and Natural Gas, says: "In mineral lands the surface or soil as adapted to cultivation may be separated from the mineral right or the right to dig under the surface for, and one person may own one of these rights and another person the other," citing *Railroad Co.* v. *Sanderson,* 109 Pa. 583; 58 Am. Rep. 743; *Swint* v. *Oil Co.,* 184 Pa. 202; 38 Atl. Rep. 1020; see also section 30, Bryan on Petroleum and Natural Gas.

In *Coal Co.* v. *Mellon,* 152 Pa. St. 286, Chief Justice Paxson, in delivering the opinion of the court, at page 295, says: "The mining of coal and other minerals is constantly developing new questions. Formerly a man who owned the surface owned to the cetner of the earth. Now the surface of the land may be separated from the different strata underneath it and there may be as many different owners as there are strata. *Lillibridge* v. *Coal Co.,* 143 Pa. 293. The difficulty is to so apply the law as to give each owner the right to enjoy all his property or strata without infringing upon the right of other owners, where the owner of the surface has neglected to guard his own rights in the deed by which he granted the lower strata to other owners." Justice Paxson further says: "In the earlier days of the common law the attention of buyers and sellers, and, therefore, the attention of the courts, was fixed upon the surface. He who owned the surface owned all that grew upon it and all that was buried beneath it. His title extended upward to the clouds and downward to the earth's center. The value of his estate lay, however, in the arable qualities of the sur-

face, and, with rare exceptions, the income derived from it was the result of agriculture. The comparatively recent development of the sciences of geology and mineraology and the multiplication of mechanical devices for penetrating the earth's crust have greatly changed the uses and the values of lands. The tracts that were absolutely valueless, so far as the surface was concerned, have come to be worth many times as much per acre as the best farming lands in the commonwealth, because of the rich deposits of coal, or iron, or oil, or gas known to underlie them at various depths. These deposits are sometimes found, however, beneath well cultivated farms, so that the surface has a large market value apart from the value of the deposits of coal or other minerals under it. In such cases the owner is rarely able to utilize the lower stores of wealth to which he has title, by mining operations conducted by himself, and for this reason he sells them to some person or corporation to be mined and to be moved. So it often happens that the owner of a farm sells the land to one man, the iron, or oil, or gas to another, giving to each purchaser a deed or conveyance in fee simple for his particular deposit or stratum, while he retains the surface for settlement and cultivation precisely as he held it before. The severance is complete for all legal and practical purposes. Each of the separate layers or strata becomes a subject of taxation, of incumbrance, levy, and sale, precisely like the surface. As against the owner of the surface each of the several purchasers would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his underlying estate, and to occupy so much of the surface, beyond the limits of his shaft, drift, or well, as might be necessary to operate his estate, and to remove the product thereof. This is a right to be exercised with due regard to the owner of the surface, and its exercise will be restrained, within proper limits, by a court of equity if this becomes necessary; but subject to this limitation it is a right growing out of the contract of sale, the position of the stratum sold, and the impossibility of reaching it in any other manner." In *Murry* v. *Allard,* (Tenn.) 39 L. R. A. 249, at page 251, the court quoted from second Rapalje & L. Law Dict. page 821: "In the most general sense of the term minerals are those parts of the earth which are capable of

being got from underneath the surface for the purpose of profit. The term therefore includes coal, metal, ores of all kind, clay, stone, slate and coprolites. 'Surface' means that part of the land which is capable of being used for agricultural purposes," and cites *Railroad Co.* v. *Checkley,* L. R. 4 Eq. 19; *Heat* v. *Gill,* L. R. 7 Ch. 699; Atty. Gen. Tomline, L. R. 5 Ch. Div., 762. There can be no question but that the word "surface" has a definite certain meaning; that it is that portion of the land which is or may be used for agricultural purposes, for plowing, grazing, etc., and that a conveyance of the surface of a tract of land as completely severs the surface from the various strata beneath it as the conveyance of the coal, iron, limestone or any other specified stratum or interest in the land conveys a separate estate. It is claimed by appellants that the language used in the deed is to be taken most strictly against the grantor, and cites Jones on Real Property, s. 52; 45 W. Va. 84; 2 Miner's Inst. 1066; but this can only apply where the language of the deed is ambiguous or will admit of two constructions. In s. 848 Devl. on Deeds, it is said: "It is an old principle of law that exceptions in a deed and every uncertainty are to be taken favorably for the grantee. But this rule is not applicable to any case but one of strict equivocation, cases where the language of the deed is susceptible of two interpretations. * * * But a construction should if possible, be adopted that will render all parts of the deed operative. This rule is often misunderstood; it does not mean that the words are to be twisted out of their proper meanings, but only that where the words may properly bear two meanings and where, after we have applied evidence whether extrinsic or intrinsic, admissible under the foregoing rules, we are still unable to determine in which of these meanings they were used, we must take them in the meaning most disadvantageous to the person who used them, unless the adoption of that meaning would work wrong." The defect in the argument of counsel for appellant is that he assumes that the meaning of the grantor, Wilson, is uncertain as to what he conveys to Monroe. He says that Wilson makes almost exactly the same reservations in his deed as to the coal privileges as he had Monroe to grant to him when Monroe conveys his interest in the coal to Wilson." I see nothing in this inconsistent with the view that

he is conveying alone the surface or agricultural part of the land to Monroe. The reservation of the right-of-way and to make and maintain openings for mining purposes, refers to the surface and the rights and privileges therein the same in one case as in the other. A careful examination of the deed from Wilson to Monroe will show that the grant to Monroe was of "All of the surface of the one hundred and eighty acres undivided, that was so conveyed to him by said Deison." This is the whole granting clause and is complete in itself, and mentions specifically the surface of the undivided moiety. The grantor does not specifically reserve the coal in the said Deison interest, but "Retains the right to make and maintain on said tract of land such openings as may be necessary for ventilation, for drainage and for taking out all of the coal without any liability for injury to the surface of said tract of land, or anything thereon, by reason of the mining of said coal and the right to remove the same," etc. The grantor was the owner in fee of the one undivided half of the coal before conveyed to him by Monroe and this retention of the privileges of mining the coal could with propriety be applied to his said undivided interest in the coal derived from Monroe, and could not the appellees with the same propriety claim that the granting of the surface of the one-half of the Deison undivided half interest carried with it the coal, as well as the oil and gas or any other interest therein? In *Buchanan* v. *Andrews*, 2 Scotch and Divorce Appeals 286, Syl., "It is the safest and best mode of construction to give to words free from ambiguity their plain and ordinary meaning." Counsel for appellants says that Monroe understood this deed to convey to him everything but the coal, as will appear from his deed of general warranty to John J. and William T. Williams, where "After reciting that Deison and Monroe owned the land and Monroe had sold the coal under his undivided half to Wilson, and Deison had sold his undivided one-half interest in said tract of land in fee to Wilson, and Wilson had sold all the surface of his undivided half interest in said tract of the land to Monroe, reserving the coal underlying the same, with mining and other privileges therein named." It does not appear that plaintiffs so understood it. In making their lease to the defendant South Penn Oil Co. for their interest in said oil and gas it is provided that

the lessee shall "deliver to the credit of the first parties (plaintiffs) their heirs or assigns free of cost in the pipe line to which it may connect its wells, their proportionate share of the equal one-eighth part of all oil produced and saved from the leased premises." And a similar provision in relation to the gas rental. Thus it is seen that they were not entitled under the lease to all the royalty oil and gas. It is claimed by appellees and not denied, that this provision, as to their "proportionate share" of the royalty was interlined in the lease and written in with a pen; but it is claimed by counsel for appellant that this provision for the payment to them of the proportionate share of the royalty and rental as referred to here means a distribution between the lessors in said lease as between themselves. On the 12th of June, a few days before the date of their lease, the South Penn Oil Co. had taken a lease from Wilson of the same character, for the same property, with an agreement or provision to deliver to the lessors the equal one-eighth part of the oil produced from the premises, and it appearing that the appellants had an interest in the oil, it was necessary to take from them a lease as well, to enable it to take possession and drill for oil. The lease made by the appellants was a joint lease and their "proportionate share" was a joint share, and evidently so recognized in the provision for its payment. If it had been intended to distribute the proportionate share to the lessors respectively, as between themselves, it would have so provided; but the language of the lease clearly indicates that these lessors were not entitled to the royalty except to their joint proportionate share of the one-eighth of oil and their share of the gas rental. Under the lease they were entitled to receive their share together as one share, the proportion to which they were entitled as between them and the other lessors,

There is no error in said decree and the same will be affirmed.

*Affirmed.*

DENT, PRESIDENT, (*dissenting*) :

I cannot concur in the decision in this case for the reason that th effect of it is to render the plaintiff's estate voidable at the instance of those who are held to own all the strata underneath the surface with the implied right to enter and remove

the same, including rock, fire clay, limestone, and all other formations to the center of the earth, leaving nothing whatever to support the surface. This was plainly not the intention of the parties, and if the deed so reads it should be so reformed to meet that intention. The grantor having set forth in his conveyance what rights he was to have in so far as the surface is concerned, and this was to enter and remove the coal alone, precludes any implied rights for any other purpose. So he has no implied right to enter and remove the oil and gas. They being of such volatile character as not to be the subject of separate property in place, but only when reduced to occupancy, the owner of the surface, who has the exclusive right thereto, except as to the removal of the coal, alone has the right to control the production of such oil and gas. If the life tenant is entitled to the interest on the oil produced until the expiration of the tenancy (*Eakin* v. *Hawkins,* decided at this term), the owner of the soil in fee should be entitled to such interest during the continuance of his estate. that is, perpetually, which takes the whole thereof absolutely, otherwise the owner of the soil in fee has a less estate than the life tenant. The surface when reduced to its ordinary meaning in common acceptation includes only the face of the land, and does not even cover the tillable soil. So that even the clay could be taken for the manufacture of brick and pottery. In this deed, it was clearly the intention of the parties that the surface meant not only the face of the land, but all that was necessary to support it down even to the center of the earth, except the coal, which was impliedly reserved, along with the coal privileges expressly reserved.

The case should be reversed and justice done between the parties.