# CHARLESTON.

## JACOB KORN v. A. W. EICK.

Submitted September 26, 1922.    Decided October 3, 1922.

CORPORATIONS—*Owner of Stock Sold on Condition That Certain Earnings be Turned Over to Him Held Entitled to Recover Pro Rata Share Thereof on Distribution.*

The owner of stock in a corporation, the assets of which consist of a plant used in carrying on its business and of certain funds earned in the conduct of that business, who sells his stock to another under a contract, by the terms of which the purchaser agrees to account to him for all dividends declared out of such earnings, is entitled to recover from the purchaser, when such earnings are distributed, the *po rata* share thereof received by him because of the transfer of such stock, notwithstanding the entire assets of such corporation, including such earnings, may not exceed in value the total amount of capital stock outstanding.

(MILLER, JUDGE, dissenting.)

Error to Circuit Court, Ohio County.

Action by Jacob Korn against A. W. Eick. Judgment for defendant, and plaintiff brings error.

*Reversed and judgment for plaintiff.*

*Riley & Riley,* for plaintiff in error.
*Frank W. Nesbitt,* for defendant in error.

RITZ, JUDGE:

Plaintiff instituted this suit to recover from the defendant a certain sum of money which he contends was paid to the defendant out of the earnings of certain stock in the Belmont Brewing Company, which the said defendant, by the terms of the contract for the sale of said stock, agreed to pay to the plaintiff when the same should be paid to him by said company. The case was submitted to the court in lieu of a jury upon the evidence introduced by the plaintiff, and judgment rendered in favor of the defendant, to review which this writ of error is prosecuted.

The facts shown by the record, so far as they are material to the determination of the questions involved, are not at all in dispute. In the month of July, 1919, and prior thereto, the plaintiff was the owner of forty shares of stock, of the par value of $4,000.00, of the Belmont Brewing Company, operating a brewery at Martins Ferry, Ohio. The total capital stock of this company was two thousand shares, of the total par value of $200,000.00. The defendant desired to secure the plaintiff's forty shares of stock in order that he might control the destinies of the corporation. The National Prohibition Amendment had at that time already been adopted, and would soon go into effect, and the defendant desired to get control of this property, with the view of converting it into some other kind of plant. The brewery had been operating for a number of years in a very successful manner. At the time the contract was entered into between the plaintiff and the defendant the assets of the brewery consisted of its plant and other properties used in connection therewith in the manufacture of beer, and $144,000.00 in money or other securities which had been earned by the company from the operation of the business in the past. This being the situation, the parties entered into a contract as follows: "THIS AGREEMENT, made this 26th day of July, 1919, by and between Jacob Korn, of Warwood, W. Va.,

First Party, and A. W. Eick, of Martins Ferry, O., Second Party:

WITNESSETH: That, for and in consideration of the sum of four thousand dollars ($4,000.00) to him in hand paid by Second Party, receipt whereof is hereby acknowledged, First Party hereby agrees to sell and transfer unto Second Party, his heirs and assigns, forty (40) shares of the Capital Stock of The Belmont Brewing Company, of Martins Ferry, O., a corporation existing under the laws of the State of Ohio.

Second Party agrees that, in event he is successful in acquiring ownership of sufficient shares of stock of said The Belmont Brewing Company to insure a control and organizes a new company for the purpose of establishing a new enterprise at the plant of said The Belmont Brewing Company, he will resell to said First Party said forty (40) shares for the sum of four thousand dollars ($4,000.00) and engage him as general superintendent of the new company, and admit him to a seat in its Directorate; provided, that same shall meet with the approval of First Party.

Second Party further agrees that he will hold himself liable for, and pay to First Party, all dividends on said forty (40) shares of stock which may in the future be declared and paid out of earnings prior to the date of this agreement.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year first above written.'' In accordance with the terms of this contract the plaintiff's forty shares of stock were transferred to the defendant, and this gave him the control of the company. Shortly thereafter it was determined to discontinue business and to wind up the company's affairs. The $144,000.00 of earnings above referred to were distributed at several different times to the stockholders, and the property of the company directed to be sold, and it was sold, but it appears that at the time of the trial of this case all of the proceeds had not been distributed, if in fact they had been collected. Upon discovering that the brewing company had determined to wind up its business and had directed the distribution of the $144,000.00 to the

.stockholders, the plaintiff called on the defendant to pay him the share of such distribution received on the forty -shares of stock. The defendant declined to do this, contending that the plaintiff was not entitled to receive anything on -that which was paid to him by virtue of the forty shares of :stock, inasmuch as the corporation had decided to go out of business, and the action of the board of directors in paying -out the money then on hand was the distribution of essets, .and not the declaration of a dividend. This suit was there-upon brought for the purpose of recovering the amount received by the defendant out of the $144,000.00 because of -the transfer of said forty shares of stock to him.

The question for solution is easily determined if we con-:sider the contract from the standpoint of the parties at the -time, and not from th estandpoint of the corporation. The -defendant, as well as the court below, has considered the con-tract all the time from the standpoint of the corporation -being wound up. The plaintiff was the owner of forty shares -of stock of the brewing company, but stock is an intangible thing. What he really owned was one-fiftieth equitable inter--est in the assets of the brewing company. Being the owner of .such one-fiftieth equitable interest, the next inquiry naturally is, what did he sell to the defendant? The assets of the -brewing company consisted of two things, its plant and prop-erties which had been used in carrying on its business, and -certain monies or funds which had been earned by it in the prior conduct of that business. The plaintiff was the equita--ble owner of a one-fifieth interest in each of these items. It -is perfectly clear from the contract that what he sold to the -defendant was his one-fiftieth equitable interest in the plant -and properties used in conducting the business, and that he -did not sell the equitable interest which he owned in the -funds on hand already earned, but not distributed. The -parties, as is apparent from the contract, recognized that he -could not obtain this interest in these funds until the corpo--ration distributed them, and that when it did distribute them, -so far as the corporation was concerned, they would be paid -to the holder of the stock, so that it was necessary to provide

in the contract that while the stock was transferred to the defendant for the purpose of allowing him to control the affairs of the corporation, he would, when these earnings were distributed, pay them to the plaintiff in order that the plaintiff might receive the property which he had not, in fact, sold, and which the defendant had not, in fact, bought and paid for. It is immaterial whether this company had profits or losses. These people had a right to contract just as they did contract, that is, for the sale of the full equitable interest of the plaintiff in the corporation, or for only a part of that equitable interest, and when they have so contracted the court will require the parties to observe the obligations of the contract. We are of the opinion that the plaintiff has shown a clear right to recover the one-fiftieth part of $144,-000.00 of prior earnings which had been distributed to the stockholders.

We will, therefore, reverse the judgment of the circuit court, set aside its findings, and find for the plaintiff the sum of $3,215.20, being a one-fiftieth of the $144,000.00 of prior earnings, with interest on each item thereof from the time such items were respectfully paid to the defendant to this date, with interest on this aggregate sum from this date until paid.

*Reversed, and judgment for plaintiff.*

MILLER, JUDGE, *dissenting:*

In my opinion the judgment below in favor of the defendant was clearly right and ought to be affirmed. I do not think that the strictest construction of the contract sued on justifies reversal in favor of plaintiff.

The contract and the facts and circumstances plainly show that defendant desired to acquire control of plaintiff's stock, and thereby of the company also, the business of which was then in a state of suspension because of legislation making it illegal to operate its plant, with the purpose of establishing a new enterprise. In this new enterprise he proposed to admit plaintiff, to make him superintendent and to give him the option to buy back his stock at the price given for

it. This looked good to the plaintiff, so he said. He thus became interested in the proposed new enterprise, for the advantages involved in it, and preferred to remain in the company and maintain his old associations therein. After defendant's first proposal but one obstacle remained in plaintiff's way; he wanted to realize the full value of his stock whether the new enterprise succeeded or not, and whether he stayed in or not. In other words, he wanted to reserve the same advantages and rights he would have had in the distribution of the assets of the company as if he had not parted with his stock. In addition to the par value of his stock he also wanted to share afterwards in any and all dividends which might thereafter be declared out of the prior earnings, either by the old or the new organization proposed. This was agreed to by defendant; and these were the rights which the contract sued on was intended to preserve to him. If, as the opinion of the court indicates, the contract was intended to secure payment to plaintiff of the one-fiftieth part of the $144,000.00, covering cash on hand, special deposits, liberty bonds, and treasury certificates, the amount of those assets was known to both parties, and plaintiff's supposed interest therein on that basis was capable of exact ascertainment, and a promise to pay the exact sum so ascertained. But this was not the contract; the contract was for dividends that might thereafter be declared on his stock out of the earnings made prior to the date of the agreement. The view of the court seems to be that this was not the contract, but that it was to pay plaintiff one-fiftieth of the $144,-000.00, if the new enterprise did not materialize and the company should be obliged to liquidate and distribute its assets. It seems to me that this is a very unreconable view of the contract and the attending facts and circumstances. The record shows that the company's assets over all liabilities, except stock liabilities, was about $50,000.00. This surplus as much represented earnings as the other investments. It included accounts receivable, and other real estate, aggregating about $22,532.60. When defendant bought plaintiff's forty shares of stock, his purchase represented plaintiff's

right to one-fiftieth of the whole stock liability, which was $200,000.00. If he did not get this, what did he get? But for the agreement his purchase would have taken with it the right to all dividends subsequently declared on this stock, but by the contract he bound himself to pay these dividends to the plaintiff; this and nothing more, for the contract in terms calls for "dividends on said forty shares of stock which may in the future be declared and paid out of earnings prior to the date of this agreement." Now, if the assets of the company turn out to exceed stock liability and other liabilities as shown by the surplus on hand, sufficient earnings would remain on which dividends on the stock purchased may be declared, and to all such dividends the plaintiff would be entitled when declared.

The word "dividends" called for in the contract must be referred for its definition to the statute, and to mean such sums as by section 39 of chapter 53 of the Code, the board of directors is from time to time authorized to declare out of the net profits. When the defendant shall have paid to the plaintiff such dividends, he will have satisfied fully the obligation of his contract. In *Drewry-Hughes Company* v. *Throckmorton*, 120 Va. 859, the Supreme Court of Virginia says: "It is fundamental in the law of corporations that the directors have no authority to declare a dividend upon any of its stock, common or preferred, unless the dividends are earned." The word "dividends" used in an agreement must, so our decisions say, be understood in its ordinary sense. *Findley* v. *Findley*, 11 Gratt. 434; *Snodgrass* v. *Wolf*, 11 W. Va. 158; *Williams* v. *Oil Company*, 52 W. Va. 181; *Gas Company* v. *Oil Company*, 56 W. Va. 402.

Some illustrations as to how contracts of this character are construed elsewhere may be pertinent. In California, for example, the plaintiff assigned two shares of stock in a mining company and said in the assignment, "I authorize the transfer to him (defendant) of all dividends made after the morning of the twenty-third of September." Both parties expected a dividend on Monday the twenty-second. The trustees, however, did not in fact declare the dividend until be-

tween noon and one o'clock on Tuesday. It was held that the dividend thus declared belonged to the seller. *Brewster* v. *Lathrop*, 15 Cal. 21. In *Hyatt* v. *Allen*, 56 N. Y. 553, 15 Am. Rep. 449, the syllabus says: "Plaintiff sold to defendant stock in a corporation, reserving 'all profits and dividends of and upon such stock' up to January then next. No dividend was declared till April. In an action to recover the dividend then declared it was found as a fact that part of it was earned prior to January. *Held*, that nevertheless the plaintiff was not entitled to recover any portion of the dividend." In North Carolina, it was held that where a stockholder sells stock, reserving dividends to be declared at a specific date, he retains the right to cash dividends only, not to stock dividends, of that date. *Lancaster Trust Company* v. *Mason*, 136 Am. St. Rep. 851, 68 S. E. 235. To the same effect is *Charlottesville Woolen Mills* v. *Kaufman*, 93 Va. 673. In the case of *Marble* v. *Van Wert National Bank*, 2 O. C. D. 265, the suit was by the bank to recover back a certain portion of dividends declared on fifty shares of its stock, standing on its books in the name of one Cassard, which Marble had prior to the dividend sold and transferred to Cassard. Marble procured the bank to pay him this money on the representation that it was verbally agreed between him and Cassard at the time of his sale and transfer of the stock, that he should have such share of the dividend. Cassard afterwards sued the bank and compelled it to credit his account with the whole of the dividend. The bank then sued Marble to recover the money so paid him, and he pleaded the alleged verbal agreement in defense. The court held that the sale and transfer of a certificate of stock in such corporation transfers to and vests in the vendee that portion of the entire assets of the corporation which the certificate bears to the entire stock of the corporation, and that no valid reservation of any portion of a future dividend can be made at the time of such sale and transfer. This holding was based on the proposition that in a private corporation the legal title to all corporate property, whether of original capital or of increase arising from the corporate business, is in the corpo-

ration and so remains until by a corporate act a portion or the entire assets are divided among the stockholders. An elaborate brief on the questions involved was filed by counsel for defendant in error, from which the court quoted at length, and which cites many decisions upon the subject.