IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0794
_____

FILED
**March 22, 2022**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CHANCELLOR SENIOR MANAGEMENT, LTD.
Defendant Below, Petitioner,

v.

LOUISE MCGRAW, by and through her Daughter,
NANCY REUSCHEL as Power of Attorney, and
CHARLOTTE RODGERS, by and through her Daughter,
LORETTA HOLCOMB as Power of Attorney,
on their own behalf and all others similarly situated,
Plaintiffs Below, Respondents.

_____

Appeal from the Circuit Court of Raleigh
The Honorable Andrew G. Dimlich, Judge
Civil Action No. 16-C-698-D

AFFIRMED
_____

Submitted: February 8, 2022
Filed: March 22, 2022

Avrum Levicoff, Esq.
The Levicoff Law Firm, P.C.
Pittsburgh, Pennsylvania
Counsel for Petitioner

Debra Tedeschi Varner, Esq.
Varner & Van Volkenburg, PLLC
Clarksburg, West Virginia

Christa L. Collins, Esq.
Collins Law PL
St. Petersburg, Florida

Jonathan R. Mani, Esq.
Mani, Ellis & Layne, PLLC
Charleston, West Virginia

Martha Geron Gadd, Esq.
Elizabeth Aniskevich, Esq.
AARP Foundation
Washington, D.C.

Counsel for Respondents

JUSTICE WOOTON delivered the Opinion of the Court.

CHIEF JUSTICE HUTCHISON, having been disqualified, did not participate in the decision of this case.

JUSTICE ALAN D. MOATS sitting by temporary assignment.

JUDGE BALLARD sitting by temporary assignment.

ii

**SYLLABUS BY THE COURT**

1.      "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2.      "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

3.      "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010).

4.      "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation." Syl. Pt. 9, in part, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012).

i

5.     "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."  Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

6.     "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them."  Syl. Pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

7.     "It is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning." Syl. Pt. 4,  *Williams v. S. Penn Oil Co.*, 52 W. Va. 181, 43 S.E. 214 (1903), *overruled in part on other grounds by Ramage v. S. Penn Oil Co.*, 94 W. Va. 81, 118 S.E.162 (1923).

8.     "Where an arbitration agreement names a forum for arbitration that is unavailable or has failed for some reason, a court may appoint a substitute forum pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. § 5 (1947) (2006 ed.), only if the choice of forum is an ancillary logistical concern.  Where the choice of forum is an integral part of the agreement to arbitrate, the failure of the chosen forum will render the arbitration agreement unenforceable."  Syl. Pt. 3, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

**WOOTON, Justice:**

The petitioner, Chancellor Senior Management, Ltd. (sometimes referred to as "Chancellor"), appeals the order entered by the Circuit Court of Raleigh County, West Virginia, on October 2, 2020, denying the petitioner's motion to compel arbitration. The petitioner's only assignment of error is that the circuit court refused to enforce a clear and comprehensive written agreement to arbitrate all disputes, which agreement is contained in the "Assisted Living Residency Agreement(s) The Villages at Greystone Senior Living Community (West Virginia)" ("Residency Agreement") signed by the respondents Nancy Reuschel and Loretta Holcomb on behalf of their mothers, the respondents Louise McGraw and Charlotte Rodgers, respectively. *See* text *infra*. Upon our careful review of the briefs, the arguments of counsel, the appendix record, the applicable law, and all other matters before the Court, we affirm the circuit court's decision.

## I. Facts and Procedural Background

On March 27, 2013, Ms. McGraw was admitted to The Villages at Greystone ("The Greystone"),[1] an assisted living facility located in Beckley, West Virginia. A Residency Agreement was executed on behalf of Ms. McGraw by her daughter, Ms. Reuschel. Likewise, on July 4, 2014, Ms. Rodgers was admitted to The Greystone under

---

[1] On May 27, 1998, Chancellor entered into an "Agreement to Manage an Assisted Living Community" ("Management Agreement") with Beckley Health Partners, Ltd ("Beckley Health"), which is the owner of The Greystone, to manage the facility.

1

a Residency Agreement executed by her daughter, Ms. Holcomb.[2] Both Residency Agreements contained the following arbitration provision, which provided, in pertinent part:

### X. RESOLUTION OF LEGAL DISPUTES

#### A. NONPAYMENT OF CHARGES

Any legal controversy, dispute, disagreement or claim of any kind arising out of, or related to this Agreement, or the breach thereof, regarding nonpayment by you for payments due to the Community shall be adjudicated in a court of law, or arbitrated if mutually agreed to by the parties.

#### B. RESIDENT'S RIGHTS

Any legal controversy, dispute, disagreement or claim arising between the parties after the execution of this Agreement in which you or a person on your behalf alleges a violation of any right granted you under law shall be settled exclusively by binding arbitration as set forth in Section X.D. below. This provision shall not limit in any way your right to file formal or informal grievances with the Community or the State of West Virginia or Federal government.

#### C. ALL OTHER DISPUTES

Any legal controversy, dispute, disagreement or claim of any kind arising out of, or related to this Agreement, or the breach thereof (other than those actions addressed in Sections X.A. and X.B. of this Agreement), shall be settled exclusively by binding arbitration as set forth in Section X.D. below. This arbitration clause is

---

[2] Both daughters were acting under durable powers of attorney.

meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims, and all allegations of fraud in the inducement or requests for revision of the contract.

D. CONDUCT OF BINDING ARBITRATION

You understand that by hereby agreeing to arbitrate legal disputes means that you are waiving your right to sue in a court of law and to a trial by jury. You agree to arbitrate disputes by signing this Agreement. The decision of the arbitrator(s) shall be final and binding and may not be appealed nor may it be stayed. The arbitration will be conducted as follows: *Any arbitration conducted pursuant to this Section X shall be conducted in Cabell County, West Virginia in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Service Rules of Procedure for Arbitration*. The award rendered by the arbitrator(s) shall be final, and judgment on the award shall be entered in accordance with applicable law in any court having jurisdiction thereof. The parties understand that arbitration proceedings are not free and that any person requesting arbitration will be required to pay a filing fee to AHLA and other expenses; however, the parties agree to divide the arbitration expenses equally. If you would like information regarding AHLA's Alternative Dispute Resolution Service, you may contact AHLA at (202) 833-1100 or Suite 600, 1025 Connecticut Avenue NW, Washington, DC 20036-5405.

(Emphasis added). The AHLA "Rules of Procedure for Consumer Arbitration" ("AHLA Rules"), applicable to claims received on or after September 15, 2019, set forth certain

3

requirements that must be met in order for a claim to be arbitrated in accordance with the

AHLA Rules. In "Section 2: Filing a Claim," it is specified that:

**2.1 Requirements**

To file a claim, a party must complete and submit the <span style="color:red">claim form</span> on the AHLA website, pay the applicable fees listed in **Exhibit 3** and on the form, provide a statement describing the issue(s) to be arbitrated, and either provide a copy of an agreement to arbitrate or a court order requiring arbitration of the claim under the Rules or cite a statute or regulation authorizing or requiring arbitration under the Rules.

If the agreement to arbitrate was signed before the events giving rise to the claim occurred, the agreement must:

(1)      be a separate document conspicuously identified as an agreement to arbitrate;

(2)      include the following notice, or substantially similar language, in a conspicuous location:

<span style="color:red">Voluntary Agreement to Arbitrate</span>

**THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. PLEASE READ IT CAREFULLY BEFORE SIGNING.**

**This is a voluntary agreement to resolve any dispute that may arise in the future between the parties under the American Health Lawyers Association's Rules of Procedure for Arbitration. In arbitration, a neutral third party chosen by the parties issues a final, binding decision. When parties agree to arbitrate, they waive their right to a trial by jury and the possibility of an appeal.**

(3)      state conspicuously that the health care entity will provide the same care or treatment, without delay, if the agreement is not signed; and

(4)      explicitly grant the resident or his or her representative the right to rescind the agreement within 30 calendar

days of signing it (unless a state law applicable to contracts generally grants a longer period for revocation).

(Emphasis added).

The AHLA Rules also includes the following provision:

**2.4 Hearing on Administration of Arbitration**

(a)     SCHEDULING. If a Consumer claims the agreement to arbitrate fails to comply with the requirements listed in Rule 2.1, the arbitrator, once appointed, will promptly schedule a preliminary hearing on this issue. The arbitrator may conduct the hearing by telephone, by video conference, and/or by submission of briefs.

(b)     DETERMINATION. Within ten (10) days after the preliminary hearing is closed, the arbitrator will issue an award determining whether the agreement to arbitrate satisfies the requirements set forth in Rule 2.1. If the arbitrator determines that *the agreement does not satisfy the requirements, the arbitrator will issue a Final Award terminating the arbitration without prejudice to any claims or defenses.* The Final Award may order the Health Care Entity to pay all the costs and fees of arbitration, including the filing fee. If the arbitrator determines the agreement satisfies the requirements, the arbitrator will issue an interim award to that effect. Any determination under this section not to administer the arbitration shall not be considered a determination on the validity of the arbitration agreement, and the parties may arbitrate in another forum if their agreement so provides or if they otherwise agree.

(Emphasis added).

On November 29, 2016, the respondents, Louise McGraw, by and through her Daughter, Nancy Reuschel, as power of attorney, and Charlotte Rodgers, by and through her Daughter, Loretta Holcomb, as power of attorney, on their own behalf and all others similarly situated, filed an amended complaint[3] against the petitioner.[4] The respondents alleged that the petitioner defrauded their respective mothers[5] by making misrepresentations and misleading statements, and concealing material facts, all of which led them to believe the petitioner would assess its residents' needs and provide staffing sufficient to meet those needs. The amended complaint alleged that the petitioner's actions or inactions violated the West Virginia Consumer Credit and Protection Act ("WVCCPA"). *See generally* W. Va. Code §§ 46A-1-101 to -8-102 (2015 & Supp. 2021).

The petitioner answered the amended complaint[6] on January 24, 2017, raising twenty-nine separate defenses, none of which involved a demand for arbitration. Thereafter, the petitioner filed pleadings and motions, including a motion to amend its amended answer, again without any mention of the arbitration provision found in the

---

[3] The original complaint was filed on October 25, 2016.

[4] The respondents filed this action as a putative class action. However, there are no issues in regard to class action status before the Court in this appeal as a class has not yet been certified.

[5] Both Ms. McGraw and Ms. Rodgers are now deceased.

[6] The circuit court's order entered October 2, 2020, indicates that the petitioner answered the original complaint on December 5, 2016; however, the appendix record does not contain a copy of this answer.

Residency Agreements. Not until July 11, 2017, when it again sought leave to amend its answer, did the petitioner seek to add arbitration as a defense to the respondents' claims.[7] By order entered March 11, 2019, the circuit court allowed the amended answer to be filed.

On June 5, 2019 – more than two and one-half years after the filing of the original complaint – the petitioner moved to compel arbitration based upon the arbitration provision set forth in the Residency Agreements. In response thereto, the respondents filed a "Motion for Partial Summary Judgment Concerning Arbitration of Plaintiffs' Claims and Memorandum of Law in Support," seeking a determination that the arbitration provision was invalid as a matter of law because it did not comply with the rules the petitioner incorporated into the agreement, the application of which would result in dismissal of any arbitration. Specifically, the respondents argued that the arbitration provision adopted the AHLA Rules, which required that the arbitration provision: 1) be labeled as a "voluntary agreement;" 2) be presented in a "separate document conspicuously identified as an

---

[7] The respondents opposed the petitioner's motion to amend its answer in regard to arbitration, arguing that the petitioner waived that defense by failing to raise it in its initial pleadings and actively litigating the case for six months. In support of their waiver argument, the respondents pointed to numerous filings by the petitioner including responding to discovery and filing a "Motion for Judgment on the Pleadings, or in the Alternative Motion for Summary Judgment" which was based on an argument that the deceptive trade practice claims asserted by the respondents did not survive their mothers' deaths. However, the circuit court never ruled on the waiver issue, and because the respondents fail to assert any assigned error in regard to waiver, the issue is not properly before the Court.

agreement to arbitrate;" 3) state that the provision of care is not contingent on signing the arbitration provision; and 4) allow for revocation of the agreement for thirty days after execution. According to the AHLA Rules, if the arbitration agreement failed to satisfy the foregoing requirements, the arbitrator was "required to issue a Final Award terminating the arbitration. . . ." Here, the respondents argued, the arbitration provision in the Residency Agreements failed to comply with any of the foregoing requisite provisions of the AHLA Rules and this failure precluded arbitration. The respondents further argued that the provision not only requires application of the AHLA Rules but also clearly designates the AHLA as the arbitration forum by requiring that the arbitration fee be paid to the AHLA and directing the parties to the AHLA's Dispute Resolution Service. In this latter regard, the respondents contended that because the provision required the use of a particular arbitration forum, the forum is an integral term of the agreement; and therefore, because the forum was unavailable, the arbitration provision is invalid.

In its amended brief in support of arbitration, the petitioner argued, among other things, that the arbitration provision did not require the AHLA to conduct or administer the arbitration, and thus the unavailability of the AHLA to conduct the arbitration was irrelevant. According to the petitioner, even if the provision could be read to require that the AHLA conduct the arbitration, the unavailability of an arbitration forum did not render the agreement to arbitrate unenforceable.

By order entered October 2, 2020, the circuit court found that while the claims asserted by the respondents would otherwise be subject to arbitration, the arbitration provision could not be enforced because it was contained in the admissions documentation, i.e., the Residency Agreements, rather than in a separate document, and therefore the agreement could not be enforced as written. In short, the court found that the petitioner "made a *prima facie* showing of the existence of an arbitration agreement. [The respondents], however, have met their burden of proof by demonstrating that the subject agreement cannot be enforced as written because it does not comply with its own stated standards." As a result, the court denied the petitioner's motion to compel arbitration. It is from this order that the petitioner appeals.

## II. Standard of Review

"An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013). Further, "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017); *accord Credit Acceptance*, 231 W. Va. at 525, 745 S.E.2d at 563. Under this standard of review, we address the issue before us.

# III. Discussion

The sole issue before this Court is whether the circuit court erred in refusing to enforce the arbitration provision contained in the Residency Agreements. The petitioner contends that the arbitration provision does not require the AHLA to administer the arbitration because it only requires that the arbitration be conducted "in accordance with" the AHLA Rules of Procedure for Consumer Arbitration. According to the petitioner, Rule 2.1 of the AHLA "only imposes certain requirements that an arbitration agreement must meet in order for the AHLA to administer the arbitration.[8] It does not create a standard of enforceability of the arbitration agreement." (Footnoted added). The petitioner further argues that the language "in accordance with" means that the requirements of Rule 2.1 are not integrated into the arbitration agreement. Instead, pursuant to AHLA Rule 2.4(b) which the petitioner contends was ignored by the circuit court, any determination that the arbitration agreement does not satisfy the requirements of the Rule 2.1, "shall not be considered a determination on the validity of the arbitration agreement, and the parties may

---

[8]We reject the petitioner's argument that the "[t]he drafter and parties could not have intended that the requirements of Rule 2.1 create standards of enforceability of the arbitration" because Rule 2.1 was not enacted by the AHLA until 2019, "well after the subject Residency Agreements were entered into." Significantly, the AHLA Rules expressly provide that "[a] claim will be arbitrated in accordance with the version of these Rules posted on the website of the American Health Lawyers Association (AHLA) on the date a claim is filed." Further, the petitioner's argument was not raised before the circuit court and expressly relies upon certain exhibits containing prior versions of the AHLA Rules that the petitioner affixed to its petition for appeal. These exhibits constitute new evidence and were not part of the record considered by the circuit court. In this regard, by order entered July 15, 2021, we granted the respondents' motion to strike exhibits attached to the petitioner's brief because the exhibits and this evidence, as well as the petitioner's arguments inextricably connected thereto, are not properly considered in this decision.

10

arbitrate in another forum if their agreement so provides or if they otherwise agree . . . ." Thus, the petitioner claims that Rule 2.1 is not a "procedural rule" but is merely a rule relating to the administration of arbitration. In other words, the petitioner argues that Rule 2.1 "has absolutely no bearing on the enforceability of an agreement to arbitrate, and represents nothing more than an internal operating administrative requirement." We disagree.

> We have held that
>
> > [w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010). In *Certegy Check Services, Inc. v. Fuller*, 241 W. Va. 701, 828 S.E.2d 89 (2019), we recognized that "[t]he threshold issue—'whether a valid arbitration agreement exists'— is really two intertwined issues. First, is there an agreement? Second, if there is an agreement, is it valid (i.e., in the sense of being enforceable)?" *Id*. at 704, 828 S.E.2d at 92. In this case, both parties agree that an arbitration provision exists. The issue is whether it is a valid arbitration agreement.

In addressing the validity of the arbitration provision, it is well established that "[s]tate law governs the determination of whether a party agreed to arbitrate a

11

particular dispute." *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 673, 724 S.E.2d 250, 277 (2011), *overruled in part on other grounds, Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012). Further, "[n]othing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation." *Id.* at 657, 724 S.E.2d at 261, Syl. Pt. 9, in part. Thus, "the issue of whether an arbitration agreement is a *valid* contract is a matter of state contract law and capable of state judicial review." *State ex el. Clites v. Clawges*, 224 W. Va. 299, 305, 685 S.E.2d 693, 699 (2009). Arbitration agreements are "to be treated by courts like any other contract, nothing more, and nothing less." *Brown ex rel. Brown,* 228 W. Va. at 671, 724 S.E.2d at 275.

The parties agree that the language that comprises the arbitration provision in the Residency Agreements is clear and unambiguous. Because of this, we do not need to interpret the arbitration provision but simply to apply it. This Court held that

> [a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.
>
> . . . .
>
> It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.

Syl. Pts. 1 and 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962); *accord* Syl. Pts. 6 and 7, *Ascent Res. - Marcellus, LLC v. Huffman*, 244 W. Va. 119, 851 S.E.2d 782, 788 (W.Va. 2020). "It is also well settled that the words of an

12

agreement should be given their natural and ordinary meaning, because the parties presumably used the words in the sense in which they were generally understood." *Bennett v. Dove*, 166 W. Va. 772, 774, 277 S.E.2d 617, 619 (1981). In this regard, we previously held that "[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning." Syl. Pt. 4, *Williams v. S. Penn Oil Co.*, 52 W.Va. 181, 43 S.E. 214 (1902), *overruled in part on other grounds by Ramage v. S. Penn Oil Co.*, 94 W. Va. 81, 118 S.E.162 (1923).

First, the language of the arbitration provision found in the Residency Agreements provides that "[t]he arbitration will be conducted as follows: Any arbitration conducted pursuant to this Section X shall be conducted in Cabell County, West Virginia *in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Service Rules of Procedure for Arbitration*." [9] (Emphasis added). The petitioner focuses upon the words "in accordance with" in arguing that this language neither integrates the AHLA Rules into the arbitration agreement nor "create[s] a standard of enforceability of the arbitration agreement." In other words, the petitioner contends that "[t]he plain and unambiguous language of the arbitration provision reflects only one

---

[9] The petitioner's argument that Rule 2.1 is merely an administrative rule and not a procedural rule is disingenuous. Rule 2.1 is found in the AHLA's "Rules of Procedure for Consumer Arbitration" and there is nothing in the rule to suggest that it is purely administrative. Instead, the language of the rule set forth *supra* and discussed in greater detail *infra* sets forth the procedural requirements which must be met for filing a claim to arbitrate.

13

requirement, that the arbitration be conducted 'in accordance with' the AHLA Rules of Arbitration" but does not require that any of the other procedures in the AHLA Rules be followed or that AHLA conduct the arbitration – despite express contractual language to the contrary.

The petitioner's logic and piecemeal selection of only certain words from both the arbitration agreement and the AHLA Rules are both misguided and misleading. Inasmuch as the parties agree that the arbitration provision is unambiguous, basic principles of contract construction, *see id.*, require us to give the phrase "in accordance with" its ordinary meaning, which is: "in a way that agrees with or follows." *In accordance with*, Merriam-Webster, https://merriam-webster.com, (last visited February 21, 2022). Hence, the language "*in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Service Rules of Procedure for Arbitration*[,]" means that the arbitration will be conducted in a way that agrees with or follows the AHLA Rules.

In this regard, pursuant to the arbitration provision found in the Residency Agreements, an arbitration must follow or agree with AHLA Rule 2.1, "Requirements." This rule provides that "[i]f the agreement to arbitrate was signed before the events giving rise to the claim occurred, the agreement must:" 1) be set forth in a separate document conspicuously identified as an agreement to arbitrate; 2) include the express notice set forth *supra* in greater detail or substantially similar language in a conspicuous location; 3) provide conspicuously that the facility will provide the same care or treatment, without

14

delay, if the agreement is not signed; and 4) grant the resident or his or her representative the right to rescind the agreement within thirty calendar days of signing it. Further, any arbitration must follow Rule 2.4, which provides that "[*i*]*f the arbitrator determines that the agreement does not satisfy the requirements, the arbitrator will issue a Final Award terminating the arbitration* without prejudice to any claims or defenses." (Emphasis added).

Even a cursory examination of the arbitration provision at issue reveals that it fails to "comply with its own stated standards" set forth in the AHLA Rules; indeed, the arbitration provision is internally inconsistent with the requirements of Rule 2.1. Specifically, the arbitration provision is not contained in a separate agreement as required by Rule 2.1, but rather is buried in the Residency Agreements. Additionally, it fails to contain any language specifying that it is a "voluntary agreement," which is also required by Rule 2.1. The arbitration provision further fails to advise residents that the provision of health care is not contingent on their signing the agreement to arbitrate, and it does not provide a thirty-day period to rescind the agreement after it has been signed. According to Rule 2.4, if an arbitration provision fails to comport with the requirements of Rule 2.1, the arbitrator "will issue a Final Award terminating the arbitration." Thus, the circuit court did not err in determining that the arbitration agreement was not valid.

Additionally, the petitioner argues that the arbitration provision's reference to the AHLA to the effect that the arbitration is to be conducted "in accordance with" the

15

AHLA Rules, "is merely an ancillary logistical concern and is not a forum selection integral to the agreement to arbitrate."  The petitioner argues that "[h]ad the parties desired that the AHLA conduct or administer the arbitration, they could have specifically stated this in the arbitration agreement."  Conversely, the respondents argue that "selecting the AHLA as the arbitral forum is clear and mandatory" and while the petitioner could have provided for an alternative forum, it failed to do so.

> We held the following in syllabus point three of *Credit Acceptance*:
>
>> Where an arbitration agreement names a forum for arbitration that is unavailable or has failed for some reason, a court may appoint a substitute forum pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. § 5 (1947) (2006 ed.), only if the choice of forum is an ancillary logistical concern. *Where the choice of forum is an integral part of the agreement to arbitrate, the failure of the chosen forum will render the arbitration agreement unenforceable.*

231 W. Va. at 519, 745 S.E.2d at 557-58, Syl. Pt. 3 (emphasis added).

We easily dispense with the petitioner's argument that arbitration can occur in a forum other than the AHLA.  First, and critically, even if the arbitration provision provided a different forum for the arbitration, any non-AHLA arbitrator would be required to apply Rule 2.1 and, as discussed *supra* in greater detail, the failure of the arbitration provision to comport with the Rule 2.1 would mandate a dismissal of the arbitration.

Second, a review of the language of the arbitration provisions demonstrates clearly that the parties agreed to the AHLA conducting the arbitration and made the AHLA an integral part of the agreement, to wit:

> [t]he parties understand that arbitration proceedings are not free and *that any person requesting arbitration will be required to pay a filing fee to AHLA and other expenses*; however, the parties agree to divide the arbitration expenses equally. *If you would like information regarding AHLA's Alternative Dispute Resolution Service, you may contact AHLA . . . .*[10]

(Emphasis and footnote added). Succinctly stated, the AHLA is the only arbitrator designated in the arbitration provision; the provision requires the parties to pay a filing fee to the AHLA. The petitioner's contention that the arbitration can occur in a different forum simply is not contemplated by the arbitration provision. Therefore, the circuit court did not err in its determination that the arbitration agreement "cannot be enforced as written because it does not comply with its own stated standards."

## IV. Conclusion

For the foregoing reasons, the circuit court's order denying the petitioner's motion to compel arbitration is affirmed.

Affirmed.

---

[10] *See also* AHLA Rule 2.1 set forth *supra*.

17